CLINE vs. LIBBY.

CHATTEL MORTGAGE. *Rights of the parties as to possession of the property. Effect of a certain provision as to possession.*

1. Where a chattel mortgage provides that the mortgagee may take possession and sell whenever he may deem himself insecure, his rights under that provision do not depend upon his having *reasonable ground* for deeming himself insecure *(Huebner v. Koebke, 42 Wis., 319)*; nor is such a contract a hard and unconscionable one, especially as the right of possession passes (with the legal title) by the mortgage, in the absence of any agreement to the contrary, and as the statute makes the mortgage, if not filed in the clerk's office, invalid, except as against the parties thereto, unless the mortgagee takes and retains the possession.

2. By the terms of chattel mortgages, the mortgagee had the right to take possession and sell whenever she might deem herself insecure. When about to take possession, she was restrained by an injunctional order, which required her to accept additional security tendered by the mortgagor, and also required the mortgagor to make an inventory of the property (which was stock in trade), and pay over a certain part of the proceeds of sale thereof to be applied on his notes to the mortgagee as they became due, etc., and forbade the mortgagee to interfere with the property. *Held*, an unauthorized interference with the mortgagee's rights under the contract.

APPEAL from the Circuit Court for *Waupaca* County.

The complaint alleges that in 1877, plaintiff and one Charles R. Libby were partners in the business of buying and selling household furniture in the city of New London; that on the 13th of August of that year plaintiff purchased his said copartner's interest in the business, for $690, for which he gave

his three promissory notes, one for $200, due on the 13th of August, 1878, one for $200, due on the 13th of August, 1879, and one for $290, due August 13th, 1880, with interest at ten per cent., and all secured by a chattel mortgage upon plaintiff's entire stock in trade, of the value of $1,380, and upon a half interest in a hearse, which interest was of the value of $375; that at the time of the making of said notes and mortgage it was expressly agreed between the parties thereto, that plaintiff was to continue said business of buying and selling furniture, etc., and should have the right to sell the mortgaged property in his usual retail trade, and that from time to time, as the old stock should be reduced by sales and new stock purchased, he should execute chattel mortgages upon such new stock to secure said notes; that plaintiff accordingly continued said business at said city, and from time to time gave to said Charles R. Libby additional mortgages upon said stock, which are now on file in the office of the city clerk; that on the 24th of June, 1878, said Libby sold and delivered said notes, and assigned all said chattel mortgages, to one Klausch, as appears from the records of said city clerk; that on the 3d of July following, in pursuance of his aforesaid agreement with Charles R. Libby, and at the request of said Klausch, plaintiff executed to the latter another mortgage upon the stock then recently purchased by him, as additional security for the payment of the said notes; that, on the 16th of August following, he paid Klausch the first note in full, principal and interest, and also paid the interest then due on the other two notes, leaving a balance of $490, then and still due, which was and is secured by mortgages of personal property of over $1,500 value; that, on the 17th of the same month of August, Klausch sold and transferred the two remaining notes and said mortgages to the defendant, *Rowena F. Libby;* that defendant purchased the same with full knowledge of the aforesaid agreement between plaintiff and Charles R. Libby; that on the 19th of August, 1878, defendant, by her agents and employees, sought

to take possession of the stock and furniture in plaintiff's store, under said mortgages, and did take possession of said hearse, and has advertised the same for sale; and that upon the 20th of the same month she again attempted to take possession of the stock. It is further alleged that, by the terms of said mortgages, plaintiff was entitled to the possession of all the mortgaged property until default made; that no default has been made, and there is no sum due and payable upon said notes until August 13, 1879; and that on the 21st of August, 1878, plaintiff tendered to defendant a bond in the penal sum of $1,000, conditioned for the payment of the notes at maturity, executed by himself as principal, and by one Cline and one Bingham as sureties, together with a mortgage to secure said bond, executed by said Cline upon real estate in the city of New London of the value of $1,000; that Bingham is a resident of said city, owning property in this state to the amount of $5,000 in excess of his exemptions and liabilities; that Cline owns unincumbered real estate and personal property in this state of the value of $2,000; that with said bond and mortgage plaintiff tendered defendant one dollar to pay for recording the mortgage, and demanded of her a return of said hearse; and that she refused to accept the tender or return the property.

It is further alleged that said chattel mortgages, or some of them, contain a clause authorizing the mortgagee or his assignee, at any time when he shall deem himself insecure, to take immediate possession of the mortgaged property and sell and dispose of the same as though the mortgage were due and payable; but it is alleged and charged that the defendant purchased said notes and mortgages for the purpose of injuring plaintiff and destroying his business; that defendant does not deem herself insecure, but, through the instigation of her agent Henry A. Libby, is seeking to distress and embarrass the plaintiff, and to possess herself of plaintiff's property by a forced sale at much less than its real value, and thus obtain

payment of said notes before they are due, in order that her agent, who is engaged in the furniture trade in said city of New London, may thrive by the ruin of plaintiff's business; and that to permit her to do so would be against equity and good conscience, and would do plaintiff an irreparable injury, defendant being irresponsible as plaintiff is informed and believes. There are further averments to show that defendant is hindering plaintiff in his business and threatening to seize and sell his stock-in-trade; and plaintiff brought into court the bond and mortgage above mentioned, with the fee for recording the mortgage, and also offered to make additional securities as the court might order. The relief asked is, that defendant, etc., be restrained from all proceedings under the mortgages, and from all interference with the property, until the notes should become due, unless good and sufficient reason should exist for defendant deeming herself insecure; and there is a prayer for general relief.

Upon the verified complaint an injunctional order was obtained from a court commissioner. Defendant moved the court to set aside the order, and filed her own affidavit, in which she states that she purchased the notes and mortgages for a full and valuable consideration, and is the *bona fide* owner thereof; denies all knowledge of the agreement between plaintiff and Charles R. Libby, alleged in the complaint, and denies that such an agreement was ever made; denies all the charges of the complaint as to her motives in proposing to take possession of and sell the mortgaged property; alleges that all of said mortgages contain a clause permitting the mortgagee to take possession and sell, if at any time he shall deem himself insecure, while only one (which covers but a small part of the property) contains a further provision that, as long as the conditions of the mortgage are fulfilled, the mortgagor is to remain in possession; and alleges that, for certain specified reasons, defendant deems herself insecure in respect to the mortgage debt.

The court made an order that the bond and mortgage tendered by plaintiff to defendant be deposited with the clerk of the court to be safely kept subject to the order of the judge; that, in case of the nonpayment of either of the notes at maturity, said bond and mortgage should on such order be delivered to defendant, but that otherwise they be delivered to the plaintiff; that plaintiff make an inventory, under oath, of all the mortgaged property still owned by him, and deposit it in a certain bank within thirty days; that he keep a correct account of all sales thereafter made of said property, and at the expiration of each ninety days thereafter make a sworn statement to said bank of said sales, with the prices, and pay over to the bank one-fourth of the amount of the sales, to be by said bank paid to the defendant when said notes should become due; that defendant redeliver the hearse to one Meiklejohn, to be kept by him, and one-half the net earnings thereof to be paid to plaintiff; and that the injunctional order aforesaid be continued in force until the further order of the court. From this order defendant appealed.

The cause was submitted on briefs of *Perry & Hetzel*, with *Geo. W. Burnell*, of counsel, for appellant; and *Patchin*, *Weed & Lester* for respondent.

COLE, J.   The injunctional order in this case seems obnoxious to the objection taken to it by defendant's counsel, of being a violation of the rights of the mortgagee under the mortgages, and really an attempt on the part of the learned circuit court rather to make a new contract for the parties than to enforce the one which they themselves had made.   It is axiomatic in the law, that courts have no authority to make contracts for parties which will accord with judicial notions of fitness and propriety.   GIBSON, C. J., in *Bash v. Bash*, 9 Pa. St., 260.   By the several mortgages, the mortgagee had the right, at any time when she might deem herself insecure, to take possession of the mortgaged property, and sell the same

at public or private sale to pay the notes. This was the stipulation of the parties. In *Huebner v. Koebke*, 42 Wis., 319, this court had occasion to place a construction on such a clause in a chattel mortgage. It held that it vested an absolute discretion in the mortgagee to take possession of the property when he might deem himself insecure, and that the exercise of this right did not depend upon the fact that the mortgagee had reasonable ground for deeming himself insecure. In the order, the circuit court utterly ignored or annulled that clause in the mortgages, by enjoining the defendant from interfering in any manner with the mortgaged property. The order contains other conditions which we deem equally unauthorized, in respect to additional security tendered by the plaintiff; and also in regard to the plaintiff's making an inventory of the mortgaged property, and paying over one-fourth of the proceeds of the sales thereof to the Bank of New London, to be applied on the notes as they became due. It is true, the plaintiff does not complain of these conditions; but the defendant may well object to such a disposition of the mortgaged property. For she was entitled to the possession of that property whenever she should deem herself insecure. She was proceeding to exercise the right of taking possession, when she was enjoined.

It is claimed, however, that it was a proper exercise of the jurisdiction of a court of equity to restrain the defendant from asserting this legal right. The case of *Williamson v. New Albany, etc., Railroad Co.*, 1 Biss., 198, and other authorities, are cited in support of this position, and to the point that a court of equity will not enforce penalties but relieve against them. It is certainly familiar doctrine, that equity will relieve against penalties and forfeitures; but it has no application to the case at bar. In *Williamson v. Railroad Co.*, Mr. Justice McLean declined, on the application of the trustee, to appoint a receiver of the railroad property in a foreclosure suit for default of payment of interest, holding that the appointment

of a receiver in such a case was not a matter of course, but rested in the sound discretion of the court. And it was while considering that question, that Judge McLean makes the remark quoted in the brief of plaintiff's counsel, to the effect that "where there is a hard and unconscionable contract, a court of equity will withhold its aid, and leave the party to his remedy at law." But there is a marked distinction between that case and the one before us. Here, the mortgagee is not seeking the aid of a court of equity to enforce the contract; nor is there any ground for saying that the clause in the mortgage in regard to the defendant's taking possession of the property when she deemed herself insecure, is a hard or unconscionable agreement. The execution of a chattel mortgage vests in the mortgagee the legal title, subject to be defeated by the performance of the condition. The right of possession ordinarily follows that of property, and both would pass under the transfer, in the absence of any express or implied agreement for the retention of the property by the mortgagor. *Hall v. Sampson*, 35 N. Y., 274. And, except as against the parties thereto, our statute makes the mortgage invalid, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or the mortgage or a copy thereof be filed in the proper office. Tay. Stats., ch. 107, § 9. Where the mortgagor had the right to retain possession for a stipulated period, it was held, in *Ford v. Ransom*, 8 Abb. Pr. (N. S.), 416, that he might, by an injunction, prevent the mortgagee from taking possession before the expiration of the time limited. But we have not been referred to any case where an injunction was granted to restrain the mortgagee from asserting his possessory right under a clause in the mortgage like the one in question.

The order appealed from must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.* — So ordered.