## LEHMAN SANGER V. S. W. SLAYDEN.

### No. 857.

1. **Option—Right to Rescind Sale.**—Contract for sale of land; deed by vendor and vendor's lien note by vendee. Vendor also executed an instrument agreeing that the vendee, if "dissatisfied with the title to said property at any time" before the maturity of the purchase money note, could reconvey the property and demand the surrender of his note, paying over such rents as he had collected. *Held*, that the cause of such dissatisfaction can not be questioned by any one else; and courts will not pass upon the reasonableness of the grounds of dissatisfaction.

2. **Rescission—Tender of Reconveyance.**—In such contract the *dissatisfaction* by the vendee, to be available, must be accompanied with an offer to reconvey the property and pay the rents.

3. **Same—Estoppel.**—Vendor having postponed a proffered rescission, is held estopped to refuse a tender of the property and rents made after the contract time. Having caused the delay, he can not plead it in defense.

4. **Estoppel.**—Estoppel may grow out of words as well as acts and promises; if made and actually acted upon, they may be the basis of estoppel. See example.

5. **Reasonable Time.**—Stipulated time for rescission expired June 14, 1891; tender was made with demand to rescind on June 23, 1891. *Held*, that such demand was within reasonable time; delay had been extended at instance of vendor.

APPEAL from McLennan. Tried below before Hon. L. W. GOOD-RICH.

*Baker & Prendergast,* for appellant.—By the terms of the contract between the parties, Sanger had the right and power at any time within six months from the date of the contract to decline to buy the lot; and if within that time he became dissatisfied, or was dissatisfied with the title, and so informed Slayden, and gave Slayden to understand that he was dissatisfied with the title and wanted to rescind the trade, he did not waive his right by delaying until after the six months expired to convey the lot back to Slayden, when such delay was caused by Slayden's own request.

*M. C. H. Park,* for appellee—1. Failing to take advantage ·of this right to reconvey before the maturity of the note, the right was lost, time being of the essence of the contract. Edwards v. Atkinson, 14 Texas, 373; 3 Pom. Eq. Jur., sec. 1408; Jones v. Robbins, 50 Am. Dec., 599.

2. Persuasion of adverse party will not extend time for exercise of a right or option.

3. The condition of mind for the exercise of a privilege must be based upon reasonable grounds, and not frivolous objections. The removal of all reasonable objections before the time of performance or exercise of the right of option, destroys the right.

4. Defects in the title known at the time of the purchase can not defeat a recovery on vendor's lien notes unless there is an eviction. Twohig v. Brown, 85 Texas, 51; Fagan v. McWhirter, 71 Texas, 567; Estell v. Cole, 62 Texas, 700.

FISHER, CHIEF JUSTICE.—The appellant brought this suit against the appellee, seeking to cancel a certain note executed by appellant in favor of appellee in the sum of $3900, as the purchase price of certain lots in the city of Waco. At the time of the execution of the note by appellant, the appellee executed and delivered to appellant a deed to the lots, and also at the same time and as a part of said transaction executed and delivered to appellant the following instrument in writing: ·

"THE STATE OF TEXAS, ｝
"County of McLennan. ｝

"Know all men by these presents: That whereas Lehman Sanger has this day bought a certain house and lot of me, described in the said deed of conveyance from me to said Lehman Sanger, being 23½ feet front on the public square of Waco, Texas, and in the rear of a

corner house formerly occupied by the Waco State Bank, and has executed to me his note for $3900, due six months from this date:

"Now therefore I, S. W. Slayden, in consideration of the premises, hereby agree tò and with said Lehman Sanger, that if he, the said Sanger, is dissatisfied with the title to said property, at any time between now and maturity of said $3900 note, that he can convey said house and lot back to me, and demand a surrender of said $3900 note, he, said Sanger, paying me over all the rents he may have collected on said property, and take up his note without paying any part of same or any interest.

"And should said property burn, the said Sanger is to pay me the insurance money, I paying him for all money paid out on account of insurance.                    [Signed]    "S. W. SLAYDEN."

The note executed by appellant in terms retained a vendor's lien on the lots to secure the amount thereof.

Appellant, as a basis for his action, alleged that he was, before the maturity of the note, dissatisfied with the title to said property, and before said maturity expressed his dissatisfaction to appellee, and in his petition he sets out the grounds of dissatisfaction, and that he offered to reconvey said property and pay to said appellee the rents he had collected on said property, and at said times the appellee requested of appellant that this be not done and that it be delayed to a later date, as the appellee could remove the objections to the title; and upon this request the appellant did not insist upon a surrender of his note and a cancellation of the trade, and granted the time asked; and thereafter, to wit, on June 23, 1891, the appellant, being dissatisfied with the title, by a deed properly executed and acknowledged, tendered back to appellee the title to said lots and the rents due, and demanded a surrender of his note, which was refused.

The note executed by appellant would by its terms fall due and mature on June 14, 1891.

The appellee by his answer pleaded the note against the appellant and his liability thereon, and asked for a judgment against appellant for the amount thereof and a foreclosure of the vendor's lien.

The court below, in effect, instructed the jury to disregard the issues made by the pleadings and evidence of the appellant, and to return a verdict for the appellee on the note, and for foreclosure of the vendor's lien. This they did, and judgment thereupon was rendered against the appellant on the note, and foreclosing the lien on the lots.

The evidence in the record supports the averments of the appellant's position, and shows that more than once before the maturity of the note he expressed to the appellee his dissatisfaction of the title, and in each instance the appellee requested further time in which to fix up the title and to remove the objections to it, and that he com-

plied with the request of appellee, and for that reason did not insist upon a cancellation of the trade, and the time was extended at the request of appellee. The evidence also shows that, the title remaining in the same condition as when he expressed his dissatisfaction, he, a few days after the maturity of the note, again expressed to appellee his dissatisfaction and tendered him back a deed for the lots, and offered the amount of rent due, etc., and demanded the surrender of his note. This was refused.

*Opinion.*—1. The first question that we deal with is to determine the legal effect to be given to the contract between the parties.

As a part of the same transaction that resulted in the execution of the note by appellant and the execution of the deed by appellee, appellee executed the contract set out in the statement of the case. This contract is to be construed and considered along with the deed and note, and as a part of the same transaction. It is explicit in terms and is free from ambiguity and uncertainty, and its effect may be determined alone by reference to its own language. It gives Sanger the right, at any time before the maturity of the note, to disaffirm the contract of sale and to cancel the same, "if he is dissatisfied with the title to said property." The question of construction of the contract with which we have to deal arises upon the meaning to be placed upon these words.

The contention of appellant is, that under this stipulation Sanger can disaffirm the contract simply upon being dissatisfied with the title within the time specified, and that this dissatisfaction need not rest upon any ground or reason, and that the grounds or reasons of his dissatisfaction can not be inquired into or determined by any court or any one else except himself.

It seems to us that this is the proper interpretation to be placed upon this contract. The parties to it have so written it, and the fact that to so construe it may result in a hardship is a circumstance that will not be considered. Such a contract is permissible and legal, and, when deliberately executed, should be enforced. It is an express authority to Sanger to disaffirm when he is dissatified with the title. To only allow him to disaffirm when his dissatisfaction rests upon some valid and reasonable objection to the title, is to practically deny him the exercise of this privilege expressly conferred by the contract, and denies him the right to the exercise of his judgment in the matter, and makes his right depend solely upon what others may think as to the merits of the title he has acquired. It substitutes their judgment for his. Others may be perfectly satisfied with the title and think that a man of ordinary caution and prudence should be likewise, and that no reasonable ground for dissatisfaction exists. But on the other hand Sanger may, with equal good faith, be dissatisfied with the title for reasons that are

satisfactory to him, and may think that a man of caution and prudence had grounds for his dissatisfaction.

The true rule of construction of contracts of this character, and the one supported, we think, by reason and the weight of authority, is, that the vendee may disaffirm the contract if he is dissatisfied, and his reasons or grounds of dissatisfaction may not be determined or inquired into by any one else. It is a matter left solely to his election. This doctrine finds support in many cases, notably in the following:

In Matador Land and Cattle Company v. White, 82 Texas, 479, in construing an instrument that stipulated that the vendee may "cut back all horses not desired," it was held, that he was not required to take any of the horses, although they might fill the requirements of the contract.

In Harder v. Board of Commissioners of Marion County, 97 Indiana, 456, under a contract that provided that the "board had a right to revoke or set aside the contract when not satisfied with the work being done," it was held, that the board could revoke contracts not satisfied, and that this provision gave them this right.

In Goodrich v. Nortwick, 43 Illinois, 445, the appellee purchased a mill, and at the time it was agreed that if the mill suited him and answered his purpose he was to keep it, otherwise it was to be returned within thirty days and the purchase money refunded to him. Within the time agreed the mill was returned, on the ground that it did not suit appellee, whereupon the appellant refused to repay him the purchase money, to recover which the suit was brought. The court says:

"But one question arises in the case, and that is as to the true construction to be given to the agreement. By this agreement, did appellee have the option of returning the machine, or was he bound to show that it failed to answer the purpose reasonably well for which it was designed? The terms of the agreement were, that if it suited and answered the purpose. It is manifest, that it was required to answer both requirements. If it did not suit appellee, then he had the right to return the property, and he was by the terms of the contract to be sole judge of whether it suited him. That did not depend upon the opinion or judgment of other persons. It was a right he reserved by his contract, and, having reserved the right, he could not be prevented from exercising it within the limited period.

"Again, if it did not answer the purpose for which it was purchased, he had the right to return it within the time. But, failing to suit, he was not bound to show that it did not answer the purpose of its purchase. All evidence, therefore, introduced to prove that it did not work well, was unnecessary, and immaterial to the issue. It did not suit appellee, and he returned the property within the stipulated period, and according to the agreement appellee was bound to prove

nothing more. The court, therefore, did not err in rejecting the evidence offered by appellant to prove that the machine was capable of performing well, and would have answered the purpose for which it was sold, had it been properly used. Such evidence was outside of the issue."

The case of McCarren v. McNulty, 7 Gray, 141, is to the same effect.

Moore v. Goodwin, 43 Hun, 535, was based upon a contract to make a crayon portrait which was to be satisfactory to the person ordering it. It was held, that the fact that he was or was not satisfied was a matter to be determined solely by the orderer, and that neither the opposite party nor the court or a jury could decide that he ought to be satisfied.

Wood Reaping and Mowing Machine Company v. Smith, 50 Michigan, 565 (45 American Reporter), was a case in which the defendant purchased a harvesting machine, upon the stipulation that if it did not work to his satisfaction he might return it. The court held that his right to reject was absolute, and his reasons could not be investigated. In the course of the opinion the court says:

"In the one class the right of decision is completely reserved to the promisor, without being liable to disclose reasons or account for his course, and a right to inquire into the grounds of his action and overhaul his determination is absolutely excluded from the promisee and from all tribunals. It is sufficient for the result that he willed it. The law regards the parties as competent to contract in that manner, and if the facts are sufficient to show that they did so, their stipulation is the law of the case. The promisee is excluded from setting up any claim for remuneration, and is likewise debarred from questioning the grounds of decision on the part of the promisor, or the fitness or propriety of the decision itself. The cases of this class are generally such as involve the feelings, taste, or sensibility of the promisor, and not those gross considerations of operative fitness or mechanical utility which are capable of being seen and appreciated by others. But this is not always so. It sometimes happens that the right is fully reserved where it is the chief ground, if not the only one, that the party is determined to preserve an unqualified option, and is not willing to leave his freedom of choice exposed to any contention or subject to any contingency. He is resolved to permit no right in any one else to judge for him or to pass on the wisdom or unwisdom, the justice or injustice, of his action. Such is his will. He will not enter into any bargain except upon the condition of reserving the power to do what others might regard as unreasonable. The following cases sufficiently illustrate the instances of the first class: Gibson v. Cranage, 39 Mich., 49; Id., 33 Am. Rep., 351; Taylor v. Brewer, 1 M. & S., 290; McCarren v. McNulty, 7 Gray, 139; Brown v. Foster, 113 Mass., 136; Id., 18 Am. Rep., 463; Zaleski v. Clark, 44 Conn., 218; Id., 26 Am. Rep.,

446; Rossiter v. Cooper, 23 Vt., 522; Hart v. Hart, 22 Barb., 606; Tyler v. Ames, 6 Lans., 280."

In Zaleski v. Clark, 44 Connecticut, 218 (26 American Reporter, 446), the court, in treating of this question, says:

"Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry. The simple inquiry is, what is the contract, and has the plaintiff performed his part of it? In this case, the plaintiff undertook to make a bust which should be satisfactory to the defendant. The case shows that she was not satisfied with it. The plaintiff has not yet then fulfilled his contract. It is not enough to say that she ought to be satisfied with it, and that her dissatisfaction is unreasonable. She, and not the court, is entitled to judge of that. The contract was not to make one that she *ought* to be satisfied with, but to make one that she *would* be satisfied with. Nor is it sufficient to say that the bust was the very best thing of the kind that could possibly be produced. Such an article might not be satisfactory to the defendant, while one of inferior workmanship might be entirely satisfactory. A contract to produce a bust perfect in every respect, and one with which the defendant ought to be satisfied, is one thing; an undertaking to make one with which she will be satisfied, is quite another thing. The former can only be determined by experts, or those whose education and habits of life qualify them to judge of such matters. The latter can only be determined by the defendant herself. It may have been unwise in the plaintiff to make such a contract, but, having made it, he is bound by it. McCarren v. McNulty, 7 Gray, 139; Brown v. Foster, 113 Mass., 136."

In Tyler v. Ames, 6 Lansing, 280, it was held, that a contract to employ an agent for a year, if he "could fill the place satisfactorily," may be terminated by the employer when in his judgment the agent fails to meet that requirement of the contract. The court said:

"The word 'satisfactorily' refers to the mental condition of the employer, and not the mental condition of a court or jury. The right of determining whether the plaintiff filled the position of agent satisfactorily must, from the nature and necessity of the case, belong to the person whose interests are directly affected by the plaintiff's action. To require the employer, under such a contract, to prove that the plaintiff did not fill the place satisfactorily, would be to require of him an impossibility, unless his own oath was taken as to his mental status on the subject. If he is required to prove facts and circumstances that would justify him in feeling dissatisfied with the manner plaintiff filled his office, it would be annulling this clause of the contract, as without such a clause he would have the right to dismiss the plaintiff if he did not properly perform his duties.

The question is quite similar to the one that is sometimes raised on chattel mortgages, containing a clause authorizing the mortgagee to take the property and sell it when he deems himself insecure. The weight of authority is in favor of the right of the mortgagee to take and sell the property without any obligation to prove that the facts and circumstances surrounding the parties justified him in deeming himself insecure. Huggans v. Fryer, 1 Lans., 276; Chadwick v. Lamb, 29 Barb., 518; Rich v. Milk, 20 Barb., 616; Hall v. Sampson, 19 How. Prac., 481; Farrell v. Hildreth, 38 Barb., 178. To same effect, Cline v. Libby, 46 Wis., 123; Id., 32 Am. Rep., 700.

In Hart v. Hart, 22 Barbour, 606, a son agreed to support and maintain his father during his life, and covenanted that if at any time the father should become dissatisfied with living with him, the son would pay his board. Held, that the father had a right to quit the family of the son whenever he became dissatisfied, without showing a good excuse for leaving, and that it was for him to judge whether there was good cause for dissatisfaction. The court said:

"It is a case where the law will not undertake to say for the party he must be satisfied, and has no right to be dissatisfied with living in this family; for the party by the express terms of the contract has made his own feelings the sole judge of the matter. Contentment and satisfaction with a man's position in a particular family is a matter which the law will not assume to determine for him. Neither will it do the converse, and say he had no cause to be discontented and dissatisfied, and therefore he can not be regarded as dissatisfied."

In Gray v. Railway, 11 Hun, 70, an action of damages for breach of contract to purchase a steamboat, "provided upon trial they are satisfied with the soundness of her machinery," etc., held, that no recovery could be had unless it were shown that the defendant was satisfied; whether or not he ought to have been was immaterial. The court said:

"By this clause the agreement left it entirely for the defendant to determine whether or not they were satisfied. There is no reason in law why parties may not, if they think proper, make agreements of this kind. And in all cases where such agreements have been made, the determination of the party that he is not satisfied, and his refusal to accept and pay for the property, is conclusive, and terminates the contract." Citing Ellis v. Mortimer, 1 B. & P., 257; McCarren v. McNulty, 7 Gray, 139; Aiken v. Hyde, 99 Mass., 183; Goodrich v. Nortwick, 43 Ill., 336; Hunt v. Wyman, 100 Mass., 198; Heron v. Davis, 3 Bosw., 336.

So in Spring v. Clock Company, 24 Hun, 175, there was a contract of hire, "provided his work and services should be to their satisfaction." Held, an employment at the pleasure of the hirer, and that he might discharge the servant without assigning any reason. The court said:

"That fact [satisfaction] is subject to no determination but the will
of the company expressed through the proper agency. The determina-
tion of the question, whether the services of the plaintiff under this
contract were satisfactory, belonged entirely to the company, subject
to no control from the courts. The will of the company is the only
tribunal to which the question can be referred."

In Harvesting Machine Company v. Chesrown, 33 Minnesota, 32,
where the agreement was to furnish a machine "guaranteed to work
satisfactorily," it was held, that the purchaser had a right upon a
reasonable trial to reject it if it did not work satisfactorily to him.

In McClure v. Briggs, Vermont Supreme Court, February 20, 1886,
A set up an organ in B's house, upon an agreement that B should keep
it and pay for it, if it proved satisfactory to him. B thought, without
cause, that he was dissatisfied, and notified A. Held, that, provided
he acted in good faith, he was the sole judge as to his satisfaction with
the organ. The court said:

"Notwithstanding the opinion of the expert, he was so under the
spell of the Estey organ vendor that he still thought he was dissatis-
fied with the tone of the organ; and if he really thought so, he was so,
for as a man 'thinketh in his heart, so is he.' But it is said that he
was bound to be satisfied, as he had no ground to be dissatisfied. He
was bound to act honestly, and give the instrument a fair trial, and
such as the seller had a right, under the circumstances, to expect he
would give, and herein to exercise such judgment and capacity as he
had, for by the contract he was the one to be satisfied, and not another
for him. If he did this, and was still dissatisfied, and that dissatis-
faction was real and not feigned, honest and not pretended, it is enough,
and plaintiffs have not fulfilled their contract, and all these elements
are gatherable from the report. This is the doctrine of Manufacturing
Company v. Brush, 43 Vermont, 528, and of Daggett v. Johnson, 49
Vermont, 345. In the former case, the defendant was required to
bring to the trial of the elevator only honesty of purpose, and judg-
ment according to his capacity, to ascertain his own wishes, and was
not required to exercise even ordinary skill and judgment in making
his determination. Daggett v. Johnson turned on an error in the ad-
mission of testimony, but Judge Redfield goes on to discuss the merits
of the case somewhat, following substantially in the line of Brush's
case, and citing it as authority. But Daggett v. Johnson is distin-
guishable in its facts from Brush's case and from this case, in that the
defendant omitted to test the plans in the very respect in which he
knew it was claimed their excellence consisted." Citing McCarren v.
McNulty, 7 Gray, 139; Brown v. Foster, 113 Mass., 136; Id., 18 Am.
Rep., 463; Zaleski v. Clark, 44 Conn., 218; Id., 26 Am. Rep., 446.
"Since the case at bar was decided, the very recent case of Singerly
v. Taylor, in the Supreme Court of Pennsylvania, reported in 25

American Law Register (N. S.), 14, has fallen under my notice, with the learned note appended thereto. There the defendant in error agreed to put in an elevator for plaintiff in error, 'warranted satisfactory in every respect.' After trying it, defendant refused to accept it; and it was held that if he acted in good faith he was, by the terms of the contract, the sole judge whether it was satisfactory or not. The cases are there largely reviewed, and found almost unanimously to sustain the view taken by the court."

As to chattel mortgages: In Werner v. Bergman, 28 Kansas, 60 (Id., 42 American Reporter, 152), it was held, that where a chattel mortgage empowers the mortgagee to take possession when he "deems himself insecure," he may do so even if no reasonable ground exists therefor.

In Barrett v. Hart, 42 Ohio State, 41 (Id., 51 American Reporter, 801), it was held, that a chattel mortgagee, authorized to take possession whenever he may "deem himself in danger of losing," etc., may do so, acting in good faith and upon facts subsequent to the mortgage, whenever he deems himself in such danger.

In Allen v. Vose, 34 Hun, 57 (Id., 51 American Reporter, 805), it was held, that where it was provided that the mortgagee might take possession "if he shall deem himself unsafe," he had an absolute discretion which did not depend upon reasonable grounds.

Another principle that goes along with the doctrine just announced, and that is one of its essentials, is that the dissatisfaction that would authorize the vendee to disaffirm must not be fraudulently and in bad faith pretended, so as to simulate a dissatisfaction that does not in fact exist. But if as a fact he is dissatisfied, his right of rescission exists.

The rule upon this subject is well expressed by the court in Manufacturing Company v. Town of Chico, 24 Federal Reporter, 893. In that case a steam engine was sold "if satisfactory" to the buyer. The court held, that in a contract of sale, when the article shall be satisfactory to the purchaser, it must in fact be satisfactory to him, or he is not bound to take it. But when the purchaser is in fact satisfied, but fraudulently and in bad faith declares that he is not satisfied, the purchaser is bound. To be dissatisfied is a fact, and can not be pretended when as a fact it does not exist.

2. The second question we consider is, was the right of appellant to disaffirm lost because he did not, before the maturity of the note, in expressing to appellee his dissatisfaction of the title, accompany such statement with a tender of a deed reconveying the land and a payment of the rents received, and was such failure cured by the tender made on June 23, 1891, a few days after the note matured?

In dealing with this question, at the outset we desire to say that, in our opinion, the term dissatisfaction, as used in the contract under consideration, means not simply an expression or declaration by the

appellant to the effect that he was dissatisfied, but such dissatisfaction that would authorize a rescission of the contract must not be only a statement to that effect, but it must be accompanied with a tender or offer to reconvey, and an offer or tender of the rents due the appellee. A naked expression of dissatisfaction without these things accompanying it would be unavailing.

The evidence in the record shows that the appellant, before the time expired in which he had the right to disaffirm, became dissatisfied with the title, and he stated to appellee that he was thus dissatisfied with the title to the property, and desired him to take it back; whereupon the appellee stated that he would fix up the title, and requested of appellant to give him more time for this purpose. There were several interviews of this kind to this effect, and at each appellee would ask for more time, which was granted by the appellant. One was a short time before the note matured. Under this state of facts, the appellee insists that the appellant lost his right to disaffirm because he did not, within the time agreed, accompany his expressions of dissatisfaction with a tender of a deed reconveying the land and a tender of the rents due; and that the tender with the declaration of dissatisfaction made on June 23, 1891, a few days after the time had expired, was too late. In other words, that the time mentioned in which the appellant should be dissatisfied was of the essence of the contract, and a strict compliance with it in this respect was required in order for the appellant to exercise his option.

It is unnecessary for us to determine whether the contract as to the time should be given this construction, as in either aspect of the question, if the facts testified to be true, we are disposed to hold that the time for performance—or in other words, the time in which the appellant could disaffirm, and express his dissatisfaction—was extended by reason of the request and promises of the appellee, and, being acted upon by appellant, the appellee will not be heard to declare that the appellant has lost and forfeited his right to disaffirm by reason of the lapse of time, when such event was occasioned by the conduct and promises of the appellee. Such conduct and promises of the appellee, and their being acted upon by the appellant in inducing him to withhold his right and privilege of disaffirming on the ground of his dissatisfaction with the title, embrace the essential elements that go to make up and create an equitable estoppel.

An analysis of the situation of the parties is this: The appellant has the valuable right and privilege under the contract to disaffirm, if he is dissatisfied, within a certain time. His dissatisfaction is made known to appellee, and he, by his conduct and promises, induces the appellant to delay taking the necessary steps to bring about a rescission until after the time expired in which this may be done. The situation of the appellant was changed, and he was led to delay, resting upon

the promises and conduct of the appellee. The right at stake was a valuable one, and if delay in its exercise was brought about by the conduct and promises of appellee, good faith and fair dealing should preclude him from asserting its loss.

Estoppel may grow out of words, as well as acts, and promises, if made and actually acted upon, may be the basis of estoppel. Such is the case before us. This is not a case in which a performance is sought to be postponed or delayed simply upon a naked promise that this may be done, for in such a case a consideration may be necessary in order to enforce the promise. But the case at bar falls within the analogy of those cases in which the time of performance of the contract has been delayed or extended by agreement of the parties, and which has been acted upon. In such cases, the consideration of such delay or extension is traceable and referable to the consideration upon which the original contract was based; and in no case have we been able to find where it was held that a failure to perform within the time fixed by the original contract was a defense to the enforcement of the contract when the time has been actually extended by agreement, and the parties have acted upon it and complied with the contract within the time extended.

3. The remaining question that it is necessary to notice is, was the final act expressive of dissatisfaction made within a reasonable time after appellee's request for more time and after the maturity of the note?

If the evidence of appellant states the true facts, we think, under the circumstances, his last and final act of disaffirmance was made in a reasonable time. There was no unusual delay in expressing his dissatisfaction, and he seems to have acted with diligence in this respect.

For the reasons stated and discussed, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 6, 1894.