Price, J.
The plaintiff brought his suit against the defendant company, in the court of common pleas of Lucas county, and after formal averments, usual in an action against a corporation, alleges in his petition the character- of the business of the defendant to be that of issuing policies of life insurr anee, and also of loaning money to the insured on certain *395 terms as to times of payment and rate of interest; and further that prior to June 19th, 1890, he had been in the service of the company as its agent in a district near to or about Toledo, under contracts made with the defendant, one in 1886 and the other in 1889; that in the latter year, an ■ arrangement was made between him and the defendant, whereby the plaintiff selected certain territory in the state of Missouri, in which he was to act for defendant as its general agent, and that in pursuance of this arrangement he went to Missouri and took charge of that field, and entered upon the duties of such agency. He further says that to evidence the duration of his term (five years,) and the rates of his commissions, and for that purpose only, he signed a written contract with the company, on the 19th day of June, 1890, (which we will refer to more fully hereafter), which provided a term of five years’ service for the company as its general agent in the counties of Missouri named therein, and also providing rates of commissions as his compensation on the different classes of policies which might be issued within his district.
The plaintiff further alleges a contemporaneous parol contract with the company, whereby it agreed to furnish him for the purposes of loans to parties who would insure, all the money necessary to supply the demand in his district, and that all correspondence should be direct with the company, and not through any branch or other agency; and that the company would provide for local examination of abstracts, so that the work could be facilitated and delays avoided. Neither of the latter provisions is in the written contract.
After more fully detailing the facts of this cause of action, plaintiff says that after he located in Missouri and had built up a good business, the company became slow in supplying money for loans- — -failed to meet the demand; was slow in passing on loans and abstracts; did not send correspondence *396 direct to him, made a change requiring the borrower to take insurance in double the amount of the loan, and by these and other means retarded him in his work, disappointed customers and injured and crippled his business — and that on the 7th day of December, 1891, the company, without good cause, cancelled the contract and terminated the agency to his damage in the sum of twelve thousand dollars.
The amended answer filed during the trial, which we find in the record, denied all the parol arrangements above quoted, and sets out two distinct sections of the written contract, under which defendant claimed to be justified in cancelling it, and admitting that the contract was declared cancelled by defendant at the time alleged by the plaintiff, denied all damages, etc.
The trial resulted in a verdict for the company. A motion for new trial was filed and overruled, ,and exceptions were entered.
The grounds of error relied on are as follows, in substance:
First: The verdict is not sustained by sufficient evidence.
Second: The court erred in the charge to the jury as to one particular part thereof.
Third: Misconduct of the jury in regard to conversations with agents of the defendant, and that one of the jurors was not competent, as found out after the verdict.
It must be observed at the beginning of our consideration of'this case, that most, if not all the delinquencies which the plaintiff charges on the defendant, and which led to his injury, were delinquencies in not doing certain things, not promised to be done in the written agreement between the parties, but were provided for alone, and existed alone, in the parol contemporaneous agreement, to-wit: to supply all the money needed for loans; to furnish local examination of abstracts, to conduct correspondence directly with plaintiff and not through any other branch, and to send no other agent to plaintiff’s territory etc. None of these provisions *397 are claimed to be in the written agreement,but they rested in the parol agreement.
The bill of exceptions discloses that great latitude was given plaintiff by the trial court in the introduction of his testimony. He was permitted to put in evidence the written contracts of 1886 and 1889, and give the parol understandings that ran with them, under the claim that such evidence was necessary in order to a correct understanding of the contract or contracts on which this suit is founded.
In the light of all that was introduced — that which was competent and that which was incompetent — what was the contract between these parties during the agency in Missouri? Were there two contracts — one in writing and the other in parol running along with the writing? Or, was there but one contract binding on the parties which was in writing, and that the other things done or to be done were simply incident to the performance of the written contract?
We hold that there was but one contract — the one in writing. If there were negotiations and propositions pro and con, which were under discussion prior to the execution of the writing, they'are supposed to have either merged in the written agreement or had been abandoned by the parties. We are unable to see how there can exist such a contemporaneous parol contract as is relied on in this case.
The written agreement provides for five years service, at a certain monthly salary, and certain commissions in addition thereto. Could there have been contemplated by the parties that they were also acting under a contemporaneous parol agreement for five years, dealing with the same subject in many respects and necessarily covering duties of the parties relating to the same -subject matter? We think not. It would be of no benefit to the plaintiff for us to find otherwise, because a parol contract not to be performed within a year, is invalid under our Statute of Frauds, and the plaintiff could base no action upon it. But we find from the evid *398 buce of the plaintiff himself, that the business of defendant was life insurance under the laws of Ohio; and that he was to receive no commissions on any loans made, his compensation being certain commissions on the cash premiums paid in addition to monthly salary. Under the law, the •company could not loan more than its surplus money, and that would necessarily vary from year to year. It is but fair to conclude, that the matter of loans was but an incident to the main business, to-wit: life insurance.
We proceed to the consideration of the terms and conditions of the written contract, the only contract binding on the parties.
The term of agency was five years, but subje'ct to certain powers contained in the latter part of the instrument, and it was by virtue of these powers, that the defendant exercised the alleged right to cancel the contract, as it attempted to do by the letter dated December 3rd, 1891, and which was received by plaintiff December 7th, 1891,
The 6th section or clause is as follows: “In case the said agent fails to comply with any of the conditions, duties and obligations under this agreement, or should the amount of new business received by said agent prove insufficient or unrenumerative in the opinion of the officers — nr if the business of the company be not conducted in a manner satisfactory to the officers, then the company may, at its option, terminate this agreement.”
10th: “This contract may be terminated upon service of notice by the company upon said agent for good, cause in accordance herewith; otherwise shall continue in force for the term of five years from July 1st, 1890, etc.”
The record discloses, that on the 8th day of October,-1891, the defendant wrote a letter to the plaintiff, calling his attention to the decrease of new business and the increase of expenses, and in a tone of complaint, asked the plaintiff for an explanation of the cause — to show why the company was receiving so little benefit for such large out-lays.
*399 There was no answer made to that letter giving any explanation, so that on December 3rd, the defendant, by letter, notified the plaintiff, that under the right reserved in section 6 of the contract above quoted, it cancelled the agreement, on the ground that in the opinion of the.officers, the business was not renumerative etc,, and plaintiff was directed to surrender all papers etc. belonging to the company.
This action of the defendant is the principal ground of recovery in this case. Under this contract, had the defendant the right and power to terminate the agency, and was the power rightfully exercised?
It was claimed in argument, that the falling off of the business was largely the fault of the company, in not supplying money for loans — and also in changing the rule, so that a party desiring to obtain a loan, must take insurance in double the amount borrowed — which was objectionable, •and lost business to the agent and the company.
There is no provision in the written contract as to what amount of insurance the borrower should take, and, as before stated, no agreement as to furnishing any money for loans; and if these things had been merely a matter of previous custom, we see no reason why the company could not change such methods as the exigencies of the case might require.
The company itself is a subject of legislation and legislative control, and its manner of conducting its business may be changed and regulated from time to time as the General Assembly deems wise and prudent. So, also, the company, where not restricted by express contract, may modify and •change its methods of business, without being liable in damages to one of its agents for such changes.
The court charged the jury,that if the officers of the company acted in good faith in cancelling the contract under clause 6 of the same, the plaintiff could not recover, This is not the exact language, but the substance thereof. There *400 was an exception taken by the plaintiff to this part of the charge — not so much that it is not the law, the counsel say ■ — ns, that at the request of defendant, the court, at the close of the charge, gave prominence to this rule by repeating it to the jury
Was the law charged correctly? We have examined the cases cited by counsel, and have carefully considered such other authorities as have come under our observation in the practice.
In the case of Barrett v. Hart, 42 Ohio St., we find a rule quite pertinent: ‘‘A chattel mortgage contained the following: If the said party of the second part shall at any time deem himself in danger of losing said debt or any part thereof, by delaying collection thereof until the expiration of the time above limited for the payment thereof, * * * said party of the second part is hereby authorized to take possession of said goods at any time etc. Held, The mortgagee may take possession of such property, when he, acting in good faith * * * does deem himself in such danger.’'
In that case, the Supreme Court quote the following from the case of Furlong v. Cox, 77 Ill. 293: “This rule does not require that there should be actual danger, or that the proofs should furnish the court, at the time of the trial, with reasonable grounds to decide that there was actual danger; but it will be sufficient if at the trial, it appears that at the time of taking possession there was apparent danger * *
It was held in Cline v. Libby 46 Wis. 123 — that a “clause in a chattel mortgage providing that if a mortgagee shall at any time deem himself insecure, he may take possession of and sell the property, vests in him an absolute discretion; and his right does not depend upon his having reasonable ground for deeming himself insecure.’’
Here we again call attention to a part of clause 6, in the contract: “Or, if the business of the company be not conducted in a manner satisfactory to the officers,then the company, at its option, may terminate this agreement.’’
*401 By this clause, if the business was not being conducted in a manner satisfactory to the officers of defendant, it could cancel the agreement. What were the rights of the defendant under such language?
In the case of Wilbur v. Bingham and Phelps, 3rd Circuit Court Reports, page 459, that court held:
“Where it is agreed that a furnace for a dwelling house shall be placed in the house and shall be satisfactory to the defendant, or if he is not suited with it, he need not pay for it, and may reject it, it is error to charge — that if the furnace was built in a workman-like manner and performed its intended purpose in a manner that ought to have suited and satisfied the defendant, he had no right to reject it.”
The case just cited quotes a number of authorities bearing on the question, showing that by the use of such language the party to whom the promise is made is the sole judge as to whether the work done is satisfactory.
In case of Brown v. Foster, 113 Mass., the Supreme Judicial Court say:
“If the plaintiff saw fit to do work upon articles for defendant and furnish materials therefor, contracting that the articles when manufactured should be satisfactory to the defendant, he can only recover on the contract as it was made; and even if the articles furnished by him were such that the party ought to have been satisfied with, yet, it was in the power of the other party to reject them as unsatisfactory. It is not for any one else to decide * * * ”
In the case of Gibson v. Cranage 39 Mich., p. 49, it appeared that an artist had undertaken to enlarge a picture — the picture, when completed, to be satisfactory to the purchaser. It was completed, and it was proved at the time that it was an excellent picture, and such as should have satisfied the party.
The Supreme Court, however held:
“The plaintiff agreed that the picture, when finished, *402 should be satisfactory to the defendant. It may be that the picture was an excellent one, and that the defendant ought to have been satisfied with and accepted it, but under the agreement, the defendant was the only one who had a right to decide that question. * * *. ”
In a Connecticut case, the plaintiff, a sculptor, agreed to make for the defendant, a bust of her deceased husband, agreeing that she was not bound to take it unless she was satisfied with it. The bust when completed was a fine piece of workmanship and an accurate likeness. The defendant was not satisfied with it, and-refused to pay. The Supreme Court of that state said:
“Courts of law must allow parties to make their own contracts * * *. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily immaterial. In this case, the plaintiff undertook to make a bust which would be satisfactory to the defendant. The case shows she was not satisfied with it. The plaintiff has not yet fulfilled his contract.” * * *.
Zaleski v. Clark, 44 Conn., p. 218.
See also Wood Reaper and Mowing Machine Company v. Smith, 50 Mich., 565; McCormick Harvesting Company v. Chesrown, 33 Minn., 32. The authorities are numerous on this line, and very harmonious.
The law of the case at bar was correctly given to the jury. It was the duty of the court, and not the province of the jury, to construe the contract, and we find no error in the charge of the court in his respect.
It has been pressed in argument in behalf of the plaintiff, that the cancellation of the agreement worked a great wrong in that it deprived him of commissions on renewal premiums maturing afterwards on policies which he had solicited. His contract controls that. See the clause at the bottom of the first page: “Commissions shall accrue only as premiums are paid to said company. ”
Wilson & Gorhery, for Plaintiff.
Robert Ramsey, and C. ~V. Wagner, for Defendant.
Directly above this is the statement,§ under the head of commissions: “Fifty per cent, on first year’s premium; on all subsequent years' premiums during the continuance of this contract, five per cent.’’
It is plain,from this provision, that if the contract ceases, the right to commissions ceases also, and there would be nothing due plaintiff on collections of subsequently maturing premiums.
As to the only remaining question' — the misconduct of the jury — we have only to say, that all that the plaintiff charged on this subject was fully denied in the trial court, and that court did not err in refusing a new trial on that account.
The judgment of the lower court is affirmed.