HORNER SCHOOL (incorporated) v. R. M. WESCOTT.

(Decided April 25, 1899).

*Contract—Jurisdiction.*

1. Where according to the School Catalogue tuition and board are payable in instalments, in advance, and no money thus paid to be returned in event of dismissal for bad conduct, and by special indulgence payment in advance was not insisted on from a cadet, who was dismissed for bad behavior, the school is entitled to recover the instalment which ought to have been paid in advance.

2. Where by special contract half of the Catalogue prices were to be paid, and dismissal occurred before payment, half rates only are recoverable.

3. In an action involving the construction of a contract, where it is apparent there was a *bona fide* contention for more than $200, the Superior Court has jurisdiction.

CIVIL ACTION in contract for board and tuition of two cadets entered at the Horner School, tried before *Robinson, J.,* at January Term, 1898, of the Superior Court of GRANVILLE County.

The plaintiff claimed $479.25 for board, tuition, etc., for one scholastic year for the cadets. Under the charge of the Court, excepted to by plaintiff, that there could be no recovery upon the contract, but upon a *quantum meruit* only, a verdict was rendered for the plaintiff for $38.50, value of services actually rendered. Judgment for that amount in favor of plaintiff, who appealed.

The circumstances are fully stated in the opinion.

*Messrs. A. W. Graham* and *J. W. Graham,* for plaintiff, (appellant).

*Messrs. Edwards & Royster,* for defendant.

FURCHES, J.   The plaintiff is a corporation conducting a select public school for boys.   In September, 1896, R. D. Wescott, a son of the defendant, entered this school as a student, and in October of the same year, T. L. Leonard, a nephew and ward of defendant, also entered said school as a student.   R. D. Wescott remained about five weeks and T. L. Leonard about one week, when they were expelled for going into a grog-shop on Sunday and getting drunk.

It appears from the evidence that the plaintiff had published a catalogue of its school, stating that it was founded in 1851, containing its rules, prices and terms of payment; that this catalogue had been extensively distributed, and its rules were kept posted up in the school room, the dining room, and the chambers or bed-rooms of students; that in said catalogue, under the head of "Expenses of Session of Twenty Weeks," is the following statement: "Board and tuition, including furnished room, fuel, use of arms, etc., $125.00.   Washing and lights, $6.75.   Books, stationery, etc., about $10.00.   No extra charges are made.   Payment for board and tuition must be made on September 1, 1891, $62.50; November 1, 1891, $62.50; January 18, 1892, $62.50; April 1, 1892, $62.50. No money will be returned in case of dismissal for bad conduct or in case of voluntary withdrawal, except at the option of the principals."   That the catalogue of 1896 was the same as this.

Plaintiff contends that this constitutes a contract between it and the defendant for the tuition, board, books and washing for he students, Wescott and Leonard, for the whole scholastic year, commencing in September, 1896, which plaintiff says amounts to $479.25; that it had the right to expell these "cadets" for the cause assigned, and that it was expressly stated that "no money will be paid back in case of dismissal for bad conduct;" and that a dismissal for bad conduct was equivalent to a voluntary withdrawal by these students.

The plaintiff's catalogue, published for so long a time and so extensively circulated, would ordinarily be some evidence tending to show that a party who patronized the school had seen and known its terms, and should be submitted to the jury; and if they should find that defendant had seen the catalogue, and then patronized the school, the terms would be binding on him, as an accepted offer and contract. *Horner & Graves v. Barker,* 74 N. C., 65; *Bingham v. Richardson,* 60 N. C., 215. But the plaintiff's evidence shows that these "cadets" were not received under the terms stipulated in the catalogue, but that each one of them was received under a special contract that differed from the terms stated in the catalogue. Wescott was received at one-half the catalogue price upon condition that he contributed his musical talent to the benefit of the school, one-half being $62.50, and Leonard was to be taken at $100, instead of the rates stated in the catalogue; that while plaintiff calls ten months or forty weeks a scholastic year, it calls five months, or twenty weeks, a session. If it should be held that this evidence showed a contract for the full session of ten weeks, commencing the first of September, it must be borne in mind that this was not all the evidence with regard to the contracts, under which these cadets entered the plaintiff's school. The plaintiff introduced the catalogue in evidence for the purpose of proving the contract. So the plaintiff's evidence, which shows that Wescott was to be taken at half price and Leonard at $100 per session, must be taken in connection with the catalogue, which shows that one-half of this amount, to-wit, $31.25 for Wescott, and $50 for Leonard, was due on the first of September, or when they entered school; and that there was nothing more due from them until the first of November, if they had continued in school. And before this November instalment was due they had been expelled and left school.

There is no stipulation in the contract that, if these cadets are expelled for good cause, they (or those who sent them), should be liable for the whole session, or for the scholastic year. The only stipulations are that $62.50, or *one-half* of what will be due for the session of ten weeks, is due—to be paid—at the commencement of the session or when the boy enters school. In this case, one-half was $31.25 for Wescott, and $50.00 for Leonard. This was not paid, as it was to be. If it had been paid it is stipulated that "it would not be returned except at the option of the plaintiff." That it was not paid when these boys entered school, was owing to the indulgence, and not the fault of the plaintiff, and the defendant has no right to complain of this. If this instalment had been paid, the plaintiff would have had the right to retain it, and nothing more.

As it was the defendant's duty to have paid this instalment when it was due, and not the plaintiff's fault that it was not paid, it seems that defendant should not complain if he has to pay now. And it does not seem to us that plaintiff has any right to recover more than it would have been able to retain if both plaintiff and defendant had observed and kept the contract, and these instalments had been paid.

It therefore seems to us, that plaintiff upon its own evidence, can not recover more than what was due on the September instalment.

As this action involves the construction of a contract, in which we can see there was a bona fide contention for more than $200, it seems to us that it was properly brought to the Superior Court.

We therefore decline to dismiss for want of jurisdiction. But as there was error in holding that plaintiff could not recover on the contract, there must be a new trial.