## VIDOR v. PEACOCK.

(Court of Civil Appeals of Texas. San Antonio. March 20, 1912.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 8*)—PRIVATE SCHOOLS—CONTRACT FOR TUITION—CONSTRUCTION.

Where a parent, with knowledge of the provisions of a circular and a school catalogue requiring the payment of tuition by the year, entered his son in the school and paid in advance one half the year's tuition in cash and the other half in notes, he thereby accepted and became bound by the provisions.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 11; Dec. Dig. § 8.*]

2. BILLS AND NOTES (§ 504*) — NOTES FOR TUITION—EVIDENCE.

In an action upon notes given by defendant for the tuition of his son at plaintiff's school, a school circular and catalogue were admissible in evidence as showing the terms of the contract between the parties, accepted by giving the notes, that the contract was for a year's tuition.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1719–1727; Dec. Dig. § 504.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 8*)—PRIVATE SCHOOLS — CONTRACT FOR TUITION —DEFENSE.

A parent contracted to pay a whole year's tuition for his son, unless the boy withdrew on account of severe sickness on the advice of a local physician. Subsequently the boy, while temporarily at his home in another city with a slight illness which did not prevent his attending school, developed a case of trachoma, which, according to physicians of his home city who examined him, unfitted him for further attendance at school. No examination was made by any physician of the city where the school was located. Held, that the boy's sickness with trachoma was no defense in an action upon the contract for the unpaid part of the entire year's tuition.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 11; Dec. Dig. § 8.*]

4. CONTRACTS (§ 303*)—CONSTRUCTION—PERFORMANCE PREVENTED BY SICKNESS.

The rule that a contract is not enforceable where performance on the promisee's part is prevented by sickness does not apply to a contract which specifically deals with the matter of sickness; but in such case the parties are bound according to the terms of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. § 303.*]

Appeal from Bexar County Court; Geo. W. Huntress, Judge.

Action by Wesley Peacock against C. S. Vidor. From judgment for plaintiff, defendant appeals. Affirmed.

W. S. Anthony, of San Antonio, for appellant. Terrell & Terrell, of San Antonio, for appellee.

JAMES, C. J. The action is upon two notes executed by appellant to appellee.

Defendant answered by demurrers, no question being made here thereon, and by general denial, and by special answer substantially as follows: That defendant, Vidor, desiring to enter his son into plaintiff's military school at San Antonio, entered into a special agreement with plaintiff, whereby the latter was to admit the son as a student for the scholastic year beginning September, 1908, and ending May, 1909. In consideration therefor, defendant paid plaintiff $200 in cash, and executed the notes sued on, which

were for $100 each, due, respectively, December 1, 1908, and February 1, 1909. That on November 8th the son, while a student at said school, became wholly incapacitated for performing his duties as a student by an act of God, viz., by reason of being afflicted with ingrowing toenails, which necessitated his removal from said school and placing him in a hospital in San Antonio, and having an operation performed for the removal of said toenails, and that on account of threatened blood poisoning defendant, with the consent and approval of plaintiff, removed the boy from the school to his home in Galveston. That plaintiff was fully advised from time to time of the boy's condition, and that it would endanger his health to return him to the school. That some time in January, 1909, when the son had recovered from the effect of the operation on his feet, defendant, with a view to placing him in school, had his eyes examined by competent oculists, who found that he was suffering from trachoma, an infectious and contagious disease of the eyes which wholly incapacitated him from performing his duties as a student, and prevented his return to and further attendance upon plaintiff's school, all of which was well known to plaintiff. That the son suffered continually from said disease until the end of the scholastic year in 1909, and that by reason of the sickness consequent upon the effect of ingrowing toenails and of said disease of trachoma, during all the time alleged, defendant's son was wholly incapacitated for performing his duties as a student at plaintiff's school. That defendant did not sign the stipulation, whereby he was bound by the catalogue of plaintiff, as set forth in Exhibits A and B. That, by reason of the sickness of defendant's son, the consideration for which the notes were given had failed. And by way of reconvention defendant pleaded, upon said facts, for judgment against plaintiff for the sum of $50, and for the cancellation of the notes sued on.

Plaintiff replied, pleading the provisions of his catalogue, alleging that defendant was cognizant of the same, to wit: "The school year is not divided into one-fourth, or one-half years; all payments being made 'on account' for the year. Pupils are not taken for less than a year, and the payments are not made by the month or the quarter. * * * No departure from the foregoing conditions will be made except by written contract. * * * Money advanced on account is never refunded, except in cases of severe illness, whereby the pupil withdraws from the school by the advice of a San Antonio doctor, and then the loss is shared equally by the parents and school. * * * Pupils entered are obligated to remain to the end of the year. * * * No pupil is taken for less than a year. The terms 'monthly,' 'quarterly,' or 'half year,' are not recognized." That

in direct violation of the rules and requirements as provided in said catalogue, and contrary to the agreement between plaintiff and defendant, the son, of his own volition and accord, and with the consent of his father, left the school without the fault of the plaintiff in any form. That it is true that the son had some trouble with his feet while at school; but plaintiff says that at the time thereof he sent him to a competent physician in San Antonio for treatment, and that after treatment by said physician plaintiff was informed by said physician that the boy's feet were entirely well, and that he was in a better condition for school and drill work than when he entered.

The court gave judgment for the notes, interest, and the stipulated attorney's fees, and denied recovery on the cross-action.

[1, 2] The first assignment of error is that the court erred in admitting Exhibits A and B, because defendant had not signed the stipulations in Exhibit B, whereby he should become bound by the provisions of plaintiff's catalogue, as shown in Exhibit A. The substance of Exhibit A, has already been stated from the catalogue. The material part of Exhibit B was a blank, which, together with the catalogue, had been sent by plaintiff to defendant. This blank was expected to be signed by defendant, and was as follows: "Enrollment. San Antonio, Texas, ———, 1908. The Peacock Military School. I hereby enroll my son, ———, for the school year 1908–1909. I have read the catalogue for 1907–1908 and accept the conditions, as well as the conditions of the expense account of $400.00 for the year, attached herewith, all accounts being payable in San Antonio, Texas. [Signed] ———. Residence, ———."

Mr. Vidor testified: "I wanted to send my son, King Vidor, to some school, and sent to various schools for circulars and catalogues, and received from Wesley Peacock (plaintiff herein) the circular, marked 'Exhibit B,' and also the catalogue for 1907–08. I did not sign the circular, marked 'Exhibit B.' Received several letters from Mr. Peacock, urging me to sign same; but I did not do so, for the reason that I did not want to be bound by its provisions. I came to San Antonio and went to see Mr. Peacock in person. He did not again request me to sign the circular. I paid Mr. Peacock $200 in cash, and executed and delivered to him the two notes sued on. I had no other agreement with him concerning the matter. Mr. Peacock wrote to me that I had to comply with the provisions of his catalogue, and I did not think that in the face of the fact that I had informed him of the boy's condition, and that I had not signed the contract to be bound by the provisions of the catalogue, that I should pay for what I did not get and, under the circumstances, could not get."

Mr. Peacock testified: "As owner of the

Peacock Military School, I sent Mr. Vidor a copy of the circular, marked 'Exhibit B.' I also sent him a catalogue for the year 1907–08. We had a large stock of them on hand, and I used them for the year 1908–09. Mr. Vidor did not sign the blank in Exhibit B either before or at the time he entered his son. The reason I sent the blank, Exhibit B., was to insure the enrollment of students; and I found that, unless parties did so, I could not hold them to their contracts. I did not ask Mr. Vidor to sign the enrollment contract at the time he brought his son to the school, because the tuition is paid in notes or cash for the entire year; there is then no reason for signing such a statement under ordinary circumstances. I knew he had not signed it, and I did not again ask him to do so."

The court did not err as pointed out in this assignment. The proposition of appellant is that the undisputed evidence shows that the minds of the parties did not meet and concur on the terms of the catalogue entering into the contract of the parties. It was an admitted fact that defendant knew and understood appellee's terms as set forth in the catalogue, which was sent to him, and, without signing, or being willing to sign, the enrollment slip sent him, he came to San Antonio and entered his son, without making or seeking to make any arrangement different from the terms prescribed by the catalogue. Instead of a written acceptance of such terms, he accepted same by his act. He satisfied the requirement of payment for the whole year by paying $200 in cash and giving the two notes, and without more he entered his son, impliedly under the terms of the catalogue which he knew and understood. "So entering a school or college in reliance upon the terms of the catalogue is an acceptance of the offer there made." 1 Page, Contracts, § 50.

"The plaintiff's catalogue, published for so long a time, and so extensively circulated, would ordinarily be some evidence tending to show that a party who patronized the school had seen and known its terms, and should be submitted to the jury; and if they should find that defendant had seen the catalogue, and then patronized the school, the terms would be binding on him as an accepted offer and contract." Horner School v. Wescott, 124 N. C. 518, 32 S. E. 885.

[3, 4] Under the second and third assignments, we have submitted to us these propositions:

"If the consideration for a promise fails through the act of God, this will discharge the promisor; as, where one agreed to pay a sum for tuition during a specified time, but was sick, the court will not enforce payment. The sickness, which in the law is the act of God, will not prevent the performance of the promisee's part; but it does away with the foundation for the promise."

"The court erred in the conclusions of law,

based upon the finding of facts, for the reason that he concludes, as a matter of law, that defendant is bound by the conditions of the catalogue of plaintiff, requiring defendant's son to be examined by a San Antonio physician in order that it might be ascertained by said physician whether said son was suffering from incapacitating sickness, because the undisputed testimony showed that during all the time since the son of defendant had been removed from said school of plaintiff until the end of the scholastic year in 1909 the son of defendant was suffering from such sickness that he was incapacitated from attending the school of plaintiff; and, further, because the incapacitating sickness relieved the defendant from all the obligations of the contract."

The first of these propositions, if its soundness as a general rule be admitted, can have no application to a case where there is a contract which deals with the matter of sickness, in which case the parties would be bound as they bound themselves. Here, as we have seen, Mr. Vidor agreed to the catalogue provision on the subject, which was: "Money advanced on account is never refunded except in cases of severe illness, whereby a pupil withdraws from school by the advice of a San Antonio doctor, and then the loss is shared equally by the parent and the school. No rebate under any circumstances is. allowed for withdrawals during the last month of the school year. Pupils entered are obligated to remain to the end of the year." This entered into defendant's contract. He was obligated to pay for the whole year, except, and as a condition precedent to the exception, the boy withdrew on account of severe sickness, and then upon the advice of a San Antonio physician. Unless this condition precedent was shown, defendant's contract to pay remained absolute.

As stated in Beach, Modern Law of Contracts (section 90): "But the parties to a contract may, if they think proper, agree that any matter shall be condition precedent; and if words are used in a contract so precise, express, and strong that such intention, and such intention only, is compatible with the terms employed, however inconsistent it may be with general principles of reasoning, a court can only give effect to such declared intention of the parties. The only question in every particular case is whether such intention was declared. Parties may think some matter, apparently of little importance, essential, and if they sufficiently express an intention to make the literal. fulfillment of such a thing a condition precedent it will be one."

In Garrison v. Cooke, 96 Tex. 231, 72 S. W. 55, 61 L. R. A. 342, 97 Am. St. Rep. 906, it is stated: "It is a familiar principle that in all cases where it is sought to enforce contracts consisting of reciprocal promises, or where the plaintiff himself is to do an act to

entitle himself to the action, he must either show the act done, or, if it is not done, at least that he has performed everything that it was in his power to do."

The principle is that the courts will enforce contracts as the parties have made them, and do not make contracts for them.

The provision was made, and was a part of the contract, and it was clearly possible for defendant to have obtained the advice of a San Antonio physician on the case. Plaintiff doubtless had reasons, and substantial reasons, for making and insisting on the condition. In a school of this kind, many of the pupils come from distant places, where it would be inconvenient, if not impracticable, for him to go to ascertain the circumstances under which it was given. However, the reasons, or whether or not there were any, are immaterial; it was made one of the terms of the contract, and plaintiff had the right to insist upon the withdrawal being in the manner provided for, in order to sever the contractual relations of the parties. The severance of the relation is contended for by defendant by reason of the fact that the boy, on a temporary withdrawal from the school, and while at home in Galveston, developed a case of trachoma, which unfitted him for further attendance at school. Physicians at Galveston, who examined him, testified to such fact without contradiction. The court found as a fact that the case of ingrowing toenails did not incapacitate the boy for attending school. The defense, so far as this court is concerned, must rest entirely upon the case of trachoma, and upon the fact that this was shown by the testimony of physicians at Galveston. If we sustained this defense upon this testimony, we should be nullifying that provision of the contract, which required that the withdrawal of the boy for sickness should not affect the contract as to payment of tuition for the whole year, unless it was on the advice of a San Antonio doctor. We would be allowing defendant to substitute a mode of terminating the contract different from the one they agreed should be pursued to have that effect. Defendant testified on the subject: "Mr. Peacock wrote me that I had to comply with the provisions of his catalogue; and I did not think that on the face of the fact that I had informed him of the boy's condition, and that I had not signed the contract to be bound by the provisions of the catalogue, that I should pay for what I did not get and, under the circumstances, could not get. I stated to Mr. Peacock that, under the circumstances, he ought not to require me to have a San Antonio doctor pass on the matter, when other competent doctors had done so and stated that the boy was incapacitated from attending school. I did not consult a San Antonio doctor in reference to the matter."

The judgment is affirmed.