WILSON v. STUDEBAKER CORP. OF AMERICA.

(District Court, E. D. Pennsylvania. April 3, 1917.)

No. 4228.

1. SALES ☞416(1)—ACTIONS FOR BREACH OF CONTRACT—EVIDENCE.
In an action for breach of a contract to sell and deliver automobiles to plaintiff, a dealer, who resold the same, the defendant seller can take advantage of plaintiff's breach of a similar contract the previous year only by way of set-off, and hence evidence of such breach is inadmissible to raise an inference that, because defendant had forgiven plaintiff's breach of contract, plaintiff should extend a like indulgence to defendant; but evidence of the number of cars sold by plaintiff the previous year was admissible as bearing on the volume of business which he was able to command during the year of the breach.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1171.]

2. WITNESSES ☞236(1)—EXAMINATION—ARGUMENTATIVE QUESTIONS.
Where facts on which an argument was sought to be based had been developed, a question to a witness, wholly argumentative in character, and not directed to any question of fact, is properly excluded.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 817, 819, 824, 826.]

3. SALES ☞405—CONTRACTS OF SALE—CONSTRUCTION.
A contract for the sale of motor cars to a dealer, who disposed of them to the trade, provided that the contract might be annulled at any time. The defendant manufacturer, without notifying the dealer of cancellation, defaulted in delivering cars. Held, that, as the contract contained mutual obligations, and as business men cannot be deemed to enter into an agreement which is of no effect, it must be construed as valid, unless notice of cancellation should be given, and hence the dealer might recover thereon.
[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1147–1155.]

4. SALES ☞421—JURY QUESTION.
In such case, plaintiff, who sold out his business, also sold the right to sell defendant's make of automobiles. Defendant promoted the sale and consented, but suggested that the consent take the form of a cancellation of the contract. The contract provided, not only for cancellation, but for termination. The cancellation was in writing, and recited that it was made in pursuance and for the purpose of carrying out the understanding reached by the parties. Held that, there being evidence that the understanding of the parties was the contract should be assigned, it was proper for the trial court to submit to the jury what the reference related to, and the refusal of the court to flatly charge that the legal effect of the written instrument was to cancel the contract was not error.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1203.]

5. TRIAL ☞136(3)—PROVINCE OF COURT AND JURY—WRITTEN INSTRUMENT.
The construction of written instruments is for the court.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 326.]

At Law. Assumpsit by Orin S. Wilson against the Studebaker Corporation of America. There was a verdict for plaintiff. Sur motion of defendant for new trial. Rule discharged.

J. B. Colahan, 3d, of Philadelphia, Pa., for plaintiff.
Sheldon F. Potter and Sheldon Potter, both of Philadelphia, Pa., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
240 F.—51

DICKINSON, District Judge. A summary of the reasons for a new trial now urged and the rulings of this court thereon may be helpful in the subsequent proceedings in the cause.

[1] 1. The cause of action was the breach of a contract to sell and deliver automobiles. The jury found a contract and its breach in the failure or refusal of the defendant to deliver the automobiles agreed to be delivered. The parties' had had a similar contract covering the transactions of the previous year. During that year the plaintiff accepted and paid for a less number of automobiles than the number ordered. There was nothing to indicate whether the defendant had acquiesced in this breach of the prior contract by plaintiff. No such breach was in issue by pleadings or otherwise. The defendant offered, and the trial judge excluded, evidence of this shortage. If the evidence had been admitted, it would have founded an argument advancing the inference that, because the defendant had good-naturedly forgiven the breach of its contract, the plaintiff should extend a like indulgence to the defendant for its breach of its contract, or it might have been used as the basis for the proposition that the parties had construed the contract to be not an absolute one of sale and purchase.

The evidence was excluded on the ground that the breach of one contract by the plaintiff would be no legal justification for the breach of another contract by the defendant. The latter could avail itself of prior contracts as a defense only through the medium of what would be in substantial effect a set-off. The mere fact that the plaintiff had breached a former contract would not justify the inference, nor be any evidence, that the parties had, by a course of dealings or otherwise, defined for themselves the meaning of the subsequent contract. The ability of the plaintiff to find sales for the number of automobiles ordered was to some extent in issue, and the volume of business he had been able to do the previous year did have some bearing upon the volume of business which he was able to command for the following year. To this extent the inquiry was permitted, and the answer went in evidence. The inquiry excluded was confined to the point of whether the defendant had forgiven the breach of the prior contract. The complaint of the above ruling is embodied in the first reason for a new trial.

[2] 2. The question referred to in the second reason followed a series of questions through which defendant had sought to elicit the fact that the plaintiff had parted with his claim to the moneys in suit. The fact upon which the question was based had already been developed to found any argument which might be based upon it. The question was wholly argumentative, in the sense that it sought to elicit the answer of the witness to the argument presented. As it was not directed to any question of fact, we think it was properly excluded.

3 and 4. Reasons 3 and 4 must be based upon an error. The question referred to in reason 3 was directed on re-examination to the testimony given by the witness on cross-examination as to the transactions of the previous year. The question was therefore allowed to the extent to which it had permitted the defendant to go into the transactions of the previous year. It developed, however, from the answer, that

the witness was being interrogated, not as to the features of the previous year's transactions, which had been gone into on cross-examination, but to the feature which had been excluded. A motion was then made to strike out, and this motion was allowed by the court, and not denied, as stated in reason 4.

The remaining reasons, other than purely formal ones, relate to complaints of the charge, and will be considered together. They will be discussed in the order in which presented in the brief submitted.

[3] The first proposition goes to the whole charge, in that the position taken is that binding instructions should have been given for the defendant. This in turn is based upon clause 25 of the contract. This clause in effect was that the contract might be annulled at any time. The proposition is that because of this the contract was a nullity ab initio, upon which no right of action could be found. Velie v. Kopmeier, 194 Fed. 324, 114 C. C. A. 284, and other cases, are cited. The contracts of business men are assumed to have a practical purpose. They are not to be assumed to be the absurdity of a contract which is agreed to be no contract. There was a substantial practical purpose which the arrangement between these parties was to serve. That purpose was to meet certain practical conditions. The practical conditions were that each of these parties were selfishly interested; the one to sell as many automobiles as possible, and the other to manufacture and deliver all it was able to do. It was not, however, known by the plaintiff how many cars it could find a market for, nor by the defendant how many cars it would be able to deliver to any particular locality. For the protection of each against the consequences of an absolute undertaking, the provision for cancellation was inserted.

The contract, therefore, on the part of the defendant, in practical effect meant this: So far as we now know, we will be able to deliver to you 300 automobiles whenever you are ready to take and pay for them; the deliveries, however, to be made at the times mentioned in the accompanying schedule. It may, however, be that we will not be able to live up to this contract, and because of that uncertainty we reserve the right to cancel at any time. The plaintiff was in a like situation and reserved the like right. It is, of course, obvious that no court would attempt to enforce such a contract, so far as it was executory and related to the future. Such an attempt would be futile, inasmuch as the party required to perform could abrogate the contract. If, however, this right was not exercised, and the contract remained in full force so far as it became an executed contract, it is difficult to explain why it should not be given full effect.

The position of the plaintiff may be summed up in this: The contract to deliver was in force until annulled. It is conceded that the defendant had the right to annul it. The effect of such annulment would have been to have relieved the plaintiff of his contractual obligations. Whatever the practical consequences of the annulment might have been to the plaintiff, he would have had no legal grounds of complaint; but the defendant could not leave the contract in force and refuse to comply with it.

There is nothing in the cases cited inconsistent with this. The rule in the Velie Case, in which a somewhat similar contract was under con-

sideration, was that "so long as the contract remained executory it was not enforceable against defendant." All the facts of the cited case do not appear from the report. It does appear, however, that the case was ruled upon demurrer, and that the court viewed it as an action based upon breach of an executory contract. The contract bears date September 23, 1909, and by its terms was in force until October 31, 1910. The agreement of the defendant was that it would order for shipment at least 50 automobiles before October 31, 1910. The contract was repudiated February 21, 1910. The action was for damages for the breach. Under the agreement the plaintiff was not bound to do anything. It is evident that this action was really one to enforce the contract in the respect in which it was executory. The ruling that the plaintiff could not enforce an executory contract of the character of the contract in suit is one which could be easily vindicated, if such vindication were called for.

Oakland v. Indiana, 201 Fed. 499, 121 C. C. A. 319, was a somewhat similar case in its facts, except that the litigants were reversed, and the dealer was there the plaintiff, and the manufacturer the defendant. The defendant there was under no obligation to deliver, unless it had received and had accepted orders to deliver, and it had also reserved the right to cancel. Plaintiff had agreed to purchase 50 cars during the term of the contract, and as many more as it could handle and the defendant could supply. The agreement was dated September 16, 1908, and expired on September 1, 1909. The case was to recover damages for the breach of the contract. The breach was the cancellation of the contract by the defendant on October 31st. At the trial the plaintiff limited its claims to the failure to deliver the 50 automobiles, abandoning all further claims for damages. There was a verdict and judgment in the court below for the plaintiff. This judgment was reversed, and the ruling of the appellate court supports three propositions: (1) That the right of cancellation made the contract, so far as executory, unenforceable. (2) That there was no contract, even to deliver the 50 cars, unless an order was first given therefor, and accepted. (3) That the contract for future supply and delivery of cars was unenforceable, because there was no agreement as to the kind or character or value of the cars to be delivered.

Ellis v. Dodge (D. C.) 237 Fed. 860, was also the case of dealer against manufacturer. This case was ruled upon a demurrer. The declaration set forth a contract by which the defendant granted the plaintiff the right to sell its cars within a prescribed territory. There was a provision as to the prices to be paid by the plaintiff for the cars supplied to him by the defendant. There was a provision for cancellation, which operated as a cancellation of all unfilled orders. The dealer agreed to accept and pay for such cars as should be shipped to him under the agreement, subject to his right to cancel; but there was no agreement on the part of the manufacturer to deliver any cars. There was an averment of the failure and refusal of the defendant to supply cars, but no date of repudiation of the contract is given. It would appear that the contract was allowed to run its course without any act of the defendant, other than its failure to supply the cars

which the plaintiff called upon it to supply. The demurrer to the statement was sustained.

It is to be observed that the action there was upon the contract, and the cause of action the failure of the defendant to supply cars. The ruling is therefore supported by the proposition that the defendant could not be held answerable for a failure to supply cars which it had not agreed to supply. The court, it is true, expressed itself to be of opinion that a contract which may be determined at the will of either party is no contract at all, and therefore cannot be made the basis for an action of damages. This is voiced in the expression that "to agree to do something, and reserve the right to cancel the agreement at will, is no agreement at all." The court further stated its view that, even if there had been a contract to deliver, the reserved right to cancel would have made this undertaking no contract at all. It is clear that these expressions are purely obiter and have a wholly argumentative purpose. If an agreement to deliver, subject to the right of cancellation, is a nullity ab initio, of course, the absence of the agreement would present the a fortiori argument.

The case is authority for the proposition that where a defendant has not agreed to deliver he cannot be held answerable in damages for not having delivered, but it is not an authoritative ruling for the proposition that a defendant who has agreed to deliver need not comply with his contract because he had the right to end it at will. The expressions quoted are not to be taken as the view of the court as to the law of the case now before us. They certainly do not carry any implication beyond the effect of the words used. It may be well said of a contract, as was said in the case under consideration, that a contract to do a thing, coupled with the right of revocation at any time, would indeed seem to be no contract at all. This is, however, an entirely different thing from ruling that, where a party to a contract has defaulted, he may not be held answerable for his default, even although he had the right to have relieved himself of the obligation by a revocation. The retort would be invited that he had the right to thus relieve himself from his obligation, but if he wished to be relieved he should have exercised his right within the time given to him in which to exercise it, and that he could not refuse to exercise it, and thus hold the other party to the contract as written, and yet receive all the benefits of a revocation which he never made.

All the court in Ellis v. Dodge said is what any one would say of such a contract, that a contract which could be called off is no contract at all. This is true, but what is meant is this: All the party who made this contract is required to do is to declare it off. This, of course, he will do, and because of this it is nothing. If, however, he does not call it off, but elects to keep it in force, it is difficult to understand why he should not be bound by it. Such a contract is the equivalent of this agreement: You may send me orders for delivery, and you may assume I agree to fill them, unless I notify you to the contrary. The other party has the right to act upon this assumption. The practical situation of parties affected by such a contract is illustrated by the facts of this case. The plaintiff expected, as he had the right

to expect, to get the automobiles he had ordered. On the strength of this he made contracts of sale which he could not meet. This was an injury, complaint of which is met by the answer: "We had the right to cancel our agreement at any time." The reply is obvious: "You should have either lived up to your contract or cancelled it." We are of the opinion that the contract here to fill the orders given for automobiles was a binding contract as long as in force, and that the defendant is answerable for its breach, and that its termination is a defense to be proven, and is not to be presumed, and that proof of the power to end it is not proof that it was ended.

[4, 5] The final standing ground of the defendant presents the real defense to this action, if there be any. The plaintiff sold out his business. Among the things he sold was the business of selling the defendant's make of automobiles. His right, whatever it was, to get a further supply, went with the business. The defendant was promoting the sale, and was conferred with about it, and was, indeed, an active party to it. The defendant's consent to the sale was practically indispensable. It did consent, but suggested that the consent take the form of a cancellation of the contract. It was in effect agreed that the cancellation operate as an assignment of the contract. There was a provision in the contract both for its termination and its cancellation. The distinction between the two things was preserved, and the effect of each upon the rights of the parties to the contract carefully defined. The assignment, termination, or cancellation (whichever it was in fact) was in writing. Its construction was because of this for the court. It was, however, preceded by the statement that the writing had been made in pursuance of and for the purpose of carrying out the "understanding" reached by the parties. This might, it is true (as is argued by defendant), have had reference to the contract. On the other hand, it might have had reference to something else. The trial judge could not determine this, and evidence was admitted to what it did refer. This, if credited, established the fact that the reference was to the oral agreement reached with respect to the operation of the paper and that it was given solely for the purpose of effectuating the transfer of the business.

The proper course would, therefore, seem to have been for the trial judge to have submitted to the jury to find to what the reference in the cancellation paper was, and to have instructed them that, if it had reference to the agreement reached at the conference, it took effect as an ending of the contract for the future; if the reference was not to this, then the only thing to which it could refer was the contract itself (or rather the modification of it, eliminating the 10 days' notice of cancellation), and that the paper then operated as a cancellation, affirming the seventh point of defendant. This was clearly the instruction meant to be given and as given. Reading simply the formal answers to the points, without the explanations given in the presence of the jury, this does not so clearly appear. The exceptions taken by defendant do, however, show it clearly, because the only exception taken was to the refusal of the court to flatly charge that the legal effect of the paper signed was to cancel the agreement

and render it a nullity. This the court would not have been justified in doing in the face of the evidence of to what the paper referred. This position is consistently reflected in the reasons for a new trial and in the paper book submitted. The testimony sent the paper along with the testimony to the jury, and the court was no: bound to construe it as a paper unaffected by oral evidence.

The rule for a new trial is discharged, and plaintiff has leave to enter judgment on the verdict.