C. S. MARTIN & SON v. JOHN BONURA & CO.  (No. 2135.)

(Court of Civil Appeals of Texas. Texarkana. June 13, 1919. Rehearing Denied June 26, 1919.)

1. COMMERCE ⬤═▷40(1)—DELIVERY TO CARRIER OF GOODS SOLD TO BUYER IN ANOTHER STATE INTERSTATE COMMERCE.

A contract for the delivery of peaches by Texas sellers to a common carrier in Texas for transportation to the buyer in Louisiana constituted interstate commerce, and the Texas statute, requiring the Louisiana buyer, a corporation, to have a permit to do business in Texas, does not apply.

2. SALES ⬤═▷82(1) — CONTRACT FOR PAYMENT OF EARNEST MONEY SOMEWHERE ABOUT NAMED TIME COMPLIED WITH.

Under a contract dated June 14th, for purchase and sale of peaches, providing for payment of earnest money "when peaches begin to move," where the sellers on June 24th wrote the buyer the crop would begin to move "somewhere about" the 10th of July, and the buyer on July 8th sent the sellers a check for the earnest money, which arrived July 11th, 10 a. m., there was sufficient compliance with the contract by the buyer as to earnest money payment within the time voluntarily set by the sellers.

Appeal from District Court, Franklin County; J. A. Ward, Judge.

Suit by John Bonura & Co. against C. S. Martin & Son. From judgment for plaintiff, defendants appeal. Affirmed.

The suit is by appellee, a corporation, against the appellants, a partnership, to recover damages for the breach of a written contract to deliver for shipment, f. o. b. the cars, 10 cars of Elberta peaches at $1.25 per bushel. The defendants answered by demurrer, general denial, and specially, in avoidance, that the plaintiff breached the stipulation in the contract to place the sum of $50 a car in the First National Bank of Mt. Vernon as earnest money. The plaintiff by supplemental petition replied that within the time specified in the letters of the defendant, and in reliance thereon, the plaintiff did put up the forfeit by a check properly indorsed and good for the whole amount. The case was submitted to the jury on the single issue of the amount of damages, and in accordance with the finding of the jury a judgment was entered in favor of the plaintiff.

John Bonura & Co. is a corporation incorporated under the laws of Louisiana August 2, 1917, to engage in the wholesale fruit and produce business. On June 14, 1918, C. S. Martin & Son, a copartnership, and John Bonura & Co., executed the following written agreement:

"This contract, made and entered into by and between C. S. Martin & Son, a firm composed of C. S. Martin and W. R. Martin, and John Bonura & Co., Incorporated. C. S. Martin & Son have this day sold and contracted with the John Bonura & Co., Incorporated, for ten cars of Elberta peaches at a price and consideration of Dollar and a Quarter per bushel, prices and bought f. o. b. Mt. Vernon, Texas, in refrigerator cars under ice, stock to be good merchantable peaches free from scab, gum, or twig scars, no smaller than two inches in diameter, good color, subject to and acceptable to state inspection.

"The money with which to pay for the said peaches is to be placed or wired to the First National Bank of Mt. Vernon, Texas, and when peaches begin to move the said John Bonura & Co., Incorporated, is to place an amount equal to $50 per car for each car bought, said amount to be placed in the First National Bank of Mt. Vernon, Texas, to the credit of C. S. Martin & Son, same to be earnest money to secure the performance by the said John Bonura & Co., Incorporated, of this contract; and in the event that said John Bonura & Co., Incorporated, shall fail or refuse to carry out the terms of this contract, then the said C. S. Martin & Son shall have the right to said sum as their damages by reason of the failure of the said John Bonura & Co., Incorporated, to carry out the terms of this contract. In the event the said John Bonura & Co., Incorporated, carries out the terms of the contract, the said sum of money shall be applied to the payment of the last cars of peaches delivered under the contract. The entire number of cars is to be distributed and furnished throughout the entire peach season, in equal proportions as near as possible. Loss or damage to crop by reason of hail or storm shall release the said C. S. Martin & Son from this contract."

It appears that this contract—

"was written in New Orleans, La., and was made from a form furnished by C. S. Martin. * * * Two copies of the contract were made. * * * Two copies were signed, by C. S. Martin for C. S. Martin & Son, and John Bonura, of John Bonura & Co., Incorporated; one copy delivered to C. S. Martin in New Orleans in the office of John Bonura & Co., Incorporated; the other copy delivered to John Bonura. * * * The signature of John Bonura, vice president of John Bonura & Co., Incorporated, is signed by myself as vice president."

No peaches were ever furnished to John Bonura & Co. under this contract by C. S. Martin & Son. It appears that John Bonura & Co. were ready and willing to receive and pay for the peaches in cash f. o. b. the cars at Mt. Vernon, Tex., in accordance with the terms of the contract. It was undisputed that on the 24th day of June, 1918, the defendants voluntarily wrote to the plaintiff a letter, dated June 24, 1918, as follows:

"Dear Sir: As the crop of Elberta peaches now looks like they will begin to move somewhere about the 10th, will notify you as soon as movement commences, if it is convenient you can send in your advance. I hope our deal will be satisfactory, and I will do my best to please you, and hope to be able to fill our contract, barring disasters which we cannot control."

Appellee replied to this letter by saying, in part:

"We have a letter from you, stating that you will notify us as soon as movement commences. We certainly expect to get one of the first cars, and as soon as your movement begins we are ready to forward to the bank the amount of $50 for each car in accordance with our contract."

And on July 8, 1918, the appellee mailed a letter to C. S. Martin & Son, reading as follows:

"Gentlemen: In accordance with our arrangement with you regarding 10 cars of peaches, we hand you herewith our check 11862 for $500 in accordance with the conditions of the contract. Please acknowledge receipt and say when you will send the first car. The logical routing evidently is the Texas & Pacific delivery here; however, if it is practicable, we would prefer Southern Pacific delivery here, but we fear the time and transit by that route would be too long. Please ask your agent there what he knows about it."

This letter, with the check inclosed, was received by C. S. Martin in Mt. Vernon on July 11, 1918, at 10 o'clock a. m. On July 11th, immediately after receiving it, the check was returned by C. S. Martin to the appellee, with a letter reading:

"Dear Sir: As you have waited so long before putting up the forfeit, I have resold the peaches again. I am sorry this has happened, but I wrote you two weeks ago to put up, and I waited up till the tenth, yesterday, before I sold, as you know that in this business it requires quick action."

John Bonura testified that he relied upon the letter of June 24th as to the time when peaches would begin to move and as notifying him of that period. The defendants, Martin & Son, shipped out to Farrier Bros. more than 10 cars of peaches, beginning the first shipment with a car on the afternoon of the 10th of July. The first shipment of peaches from Mt. Vernon was on July 9th, it appears, when two cars were shipped from that place. According to the record, this was the first movement of peaches. About 400 bushels of peaches constituted a car, and the peaches were of the value of $1.60 to $1.75 a bushel.

F. B. Caudle and B. O. Shurtliff, both of Mt. Vernon, and Beavers & Wilkinson, of Winnsboro, for appellants.

J. M. Burford, of Mt. Pleasant, and R. T. Wilkinson, of Mt. Vernon, for appellee.

LEVY, J. (after stating the facts as above), [1] Appellant insists that the court erred in overruling the demurrer, because the petition did not allege that the plaintiff, a Louisiana corporation, had a permit to do business in Texas. The petition alleged that the contract was executed and delivered in New Orleans, La., by the terms of which C. S. Martin & Son contracted to sell to John Bonura & Co., of New Orleans, La., 10 cars of Elberta peaches at $1.25 a bushel, to be delivered in Mt. Vernon, Tex., f. o. b. the cars, properly iced and in refrigerator cars "to be shipped to points without the state." It is thought that the court did not err in overruling the demurrer. The contract here alleged is to have the peaches delivered to a common carrier for transportation from the state. The alleged transaction was interstate commerce, and the state statute does not apply. Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Manufacturing Co. v. Finklestein, 54 S. W. 618; Medical Co. v. Johnson, 162 S. W. 394.

[2] The third assignment predicates error upon the refusal to instruct a verdict for the defendant, upon the ground that there was proven a violation on the part of the plaintiff of a material stipulation in the contract. The stipulation in question reads:

"The money with which to pay for the said peaches is to be placed or wired to the First National Bank of Mt. Vernon, Texas, and when peaches begin to move the said John Bonura & Co., Incorporated, is to place an amount equal to $50 per car for each car bought, said amount to be placed in the First National Bank of Mt. Vernon, Texas, to the credit of C. S. Martin & Son, same to be earnest money to secure the performance by the said John Bonura & Co., Incorporated, of this contract; and in the event the said John Bonura & Co., Incorporated, shall fail or refuse to carry out the terms of this contract, then the said C. S. Martin & Son shall have the right to said sum as

their damages by reason of the failure of the said John Bonura & Co., Incorporated, to carry out the terms of this contract. In the event the said John Bonura & Co., Incorporated, carries out the terms of the contract, the said sum of money shall be applied to the payment of the last cars of peaches delivered under the contract."

It clearly appears from the wording used by the parties that the deposit of $50 a car was "to be earnest money to secure the performance by the said John Bonura & Co., Incorporated, of this contract," and not exclusively in part payment of the price of the peaches. The object of "earnest money" is merely to bind the bargain and to evidence an irrevocable contract. Until the earnest or forfeit money is paid the contract is made determinable at the option of one of the parties; but here the earnest money was payable "when peaches begin to move," meaning, evidently, at Mt. Vernon, Tex. The words just quoted give much latitude as to the particular day when the money was to be deposited. The appellants, though, by the letter of June 24th undertook, it seems, to notify the appellee that peaches "will begin to move somewhere about the 10th (of July)." As appellants were at the place where the peaches were expected to be grown, and in a position to know when the Elberta peach crop there would be ready for marketing, the appellee reasonably could rely on the statements of the letter as to the time so fixed or stated therein by the appellants as to when peaches would begin to move. And when the check for the $500 earnest money reached the appellant on July 11th, at 10 o'clock, it would fairly appear that the time would be such as people would ordinarily consider as included in the words "about July 10th." And the letter of appellants further stated to appellee, "Will notify you as soon as movement commences," which contemplated further notice in that respect. There does not appear in the record any reason why the appellee may not have wholly relied, as it did, upon this letter of appellants for further information.

Even though there may be an option to terminate the contract, yet the parties should not be permitted to exercise it improperly and unjustly, to the injury of the other party, and at the same time escape all liability. Just what may be required in a particular case must depend largely upon the subject-matter and nature of the particular contract and the circumstances of the case. The appellants, it conclusively appears, undertook to terminate the contract solely on the ground that the earnest money did not arrive literally on the morning of the 10th of July, even though their letters were not that precise. It is concluded that it should be held, as the trial court did, that there was no intention on the part of John Bonura & Co. to not perform the contract, and that there was sufficient compliance as to the payment of the earnest money within the period of time voluntarily induced by the appellants in the letter of June 24th above quoted.

The remaining assignments have each been considered, and the conclusion reached that they should be overruled.

Judgment affirmed.