## JONES v. DUMAS DEVELOPMENT CO. et al.

### No. 6042.

Court of Civil Appeals of Texas. Amarillo.

April 3, 1950.

Rehearing Denied May 1, 1950.

Stone & Stone, Amarillo, for appellant.

Morgan, Culton, Morgan, Britain & White, Amarillo, for appellees.

PITTS, Chief Justice.

This is a suit for damages for alleged breach of contract filed by appellant, Troy Jones, against appellees, Dumas Development Company, a corporation, and E. B. Miller. Appellees answered by special exceptions and a general denial subject to the exceptions. The trial court sustained appellees' special exceptions. Appellant refused to amend his pleadings after which the suit was dismissed by the trial court and he perfected his appeal to this court.

The suit involves the proper construction of a written contract executed by the parties on January 12, 1949, as pleaded by appellant. Appellant, called "contractor", agreed in writing with appellees, called "owner", to build 45 houses in Dumas, Texas, on lots owned by appellees. Under the terms of the contract as pleaded appellant agreed to furnish the material, provide labor and supervise the construction of the houses according to plans and specifications previously agreed upon between the parties. All costs and expenses incurred in the process of construction were to be detailed in a set of books kept in joint custody of the parties. After the completion and acceptance of each house appellant was to be reimbursed by appellees for his expenses incurred in connection therewith and paid in addition thereto the sum of $325 for each house. The last paragraph of the contract referred to as Article IX, out of which this controversy arose, makes the following provision: "Owner shall have the right to discontinue construction hereunder at any time deemed expedient by paying to contractor all of his costs accrued to date and in addition the prorata portion of any fees earned by contractor, and for the purpose of this paragraph costs are defined as any

and every expense incurred by contractor with the construction herein provided for." Appellant further pleaded, in effect, that he held himself ready to perform under the terms of the contract when he received a letter from appellees written by E. B. Miller, President Dumas Development Company, of date May 14, 1949, before any construction began advising him as follows: "This is to advise you that I desire to exercise my right to discontinue operations under said contract and not commence any construction thereunder." Thereafter appellees began the construction of the houses themselves and were in the process of building them at the time this suit was filed. Appellant further pleaded that Article IX of the contract is ambiguous, "* * * and that said Article IX was intended by the parties to said contract to relieve the defendants (appellees) from the performance of the same only in the event that no market existed for the houses to be constructed thereunder due to economic conditions or otherwise, * * *." He further alleged that the attempt of appellees to terminate the contract "was capricious, lacking in good faith, and wholly without cause." For all of which reasons he further pleaded that appellees have breached the contract to his damage in the sum of $325 per house, aggregating the total sum of $14,625, which sum he seeks to recover.

Appellees charge, in effect, in their exceptions to appellant's pleading that such a pleading, considered in its entirety, does not allege a cause of action against appellees because it shows on its face that appellees had a right to terminate the contract at will upon paying appellant everything due him under its terms and that appellant's pleading reveals he had not performed any services under the terms of the contract, had not suffered any damages and nothing was therefore due him under the terms thereof. Appellees except further to various pleadings of appellant on the grounds that such are irrelevant and immaterial. All of appellees' exceptions were sustained by the trial court.

Appellant concedes that he is not suing for any pro rata part of fees earned or for any sums of money expended but he is suing only for damages by reason of appellees having breached the terms of the contract. Therefore the latter part of Article IX referring to pro rata part of fees earned or money expended is not material insofar as the parties are concerned in this litigation. The question here to be determined is the meaning of the first part of Article IX, or the following statement which is there made: "Owner shall have the right to discontinue construction hereunder at any time deemed expedient *. * *." Appellees assert that such a clause authorizes them to terminate the contract at any time they choose upon paying appellant any pro rata part of fees earned by him or for any sums of money expended by him but none was due him in this instance and he has not sought to recover any such but admits he is not suing for such. Appellant asserts, in effect, that the clause in question does not authorize appellees to terminate the contract at will under any circumstances but that the said clause is ambiguous. He further contends, in effect, that it was the intention of the parties by the use of the language in the said clause to relieve the appellees from the performance of the terms of the contract only in the event that no market existed for the houses in question due to economic conditions or otherwise. Appellant also contends that appellees discharged him before any construction of the houses, began, thus implying that the contract was one of employment. We do not consider the contract one of employment. Neither does it appear from the language used by appellees in their notice sent to appellant that they *discharged* appellant. From the language used in the contract it appears to us to be more of a joint adventure in, which both parties planned to have a joint interest in an enterprise out of which they were both expecting a profit. At any rate, it is a contract in which an independent contractor agreed to be his own boss in furnishing material and labor and supervising the construction of the houses in accordance with his best skill and judgment, cooperating with appellees and doing all things

necessary for the proper construction and completion of the houses according to plans and specifications previously agreed upon between the parties to the contract. No date was fixed by the terms of the contract for the work to begin and no time limit was fixed for the completion of the houses or any of them. Neither does the contract make any provision for any delay in the construction work because of the lack of an existing market for the houses due to economic conditions or for any other reason, unless the clause claimed by appellant to be ambiguous has such a meaning. The contract provides for reimbursing the contractor and paying him for his services as the work progressed as heretofore stated but the contract further provided that the contractor should not receive a salary or interest on the capital employed in the construction work.

■ A person seeking to establish ambiguity in a contract is charged with the burden of pleading ambiguity and setting out that part of the contract he contends is ambiguous and he must definitely plead the meaning or the construction of the same as relied on by him. Such must be particularly and definitely pleaded as against special exceptions. Such has been so pleaded by appellant in this case but to contend that the clause, either standing alone or considered together with all the other terms expressed in the contract, has the meaning appellant seeks to give it would be a rather strained construction it appears to us. Appellant contends, in effect, the said clause "owner shall have the right to discontinue construction hereunder at any time deemed expedient" means that the owner (appellees) shall be relieved from the performance of the terms of the contract in the event no market existed for the houses to be built due to economic conditions or otherwise, and he does not seek to give it any other meaning.

■ It is not easy to find fixed rules for determining the exact meaning of language used in a contract. It may be safely presumed that contracting parties do not labor through a library to determine if some unusual import has been attached to or some unusual meaning has been given to the use of the words they propose to use to express themselves in writing a contract. They set out the terms of the contract in words and language that come to them at the time endeavoring to express their intentions by the use of such. If there should later be a disagreement about the use and meaning of such language used, the courts, as a matter of law, will construe what they have said in the light that ordinary men would have used and understood such language. One rule for determining the meaning of words used in a contract is well stated by 12 American Jurisprudence, page 758, section 236, as follows: "Words will be given their ordinary meaning when nothing appears to show that they are used in a different sense and no unreasonable or absurd consequences will result from doing so. Words chosen by the contracting parties should not be unnaturally forced beyond their ordinary meaning or given a curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind can discover.".

■ It is conceded by the parties that an ambiguous contract is one containing doubtful and uncertain language, one obscure in meaning or having a doubtful meaning because the language therein used is indefinite and susceptible of more than one meaning or of being understood in more senses than one. It is presumed that every provision of a contract is incorporated therein for a purpose and the courts may not disregard any of the language there used by the parties to express themselves or add anything thereto. In the case of Texas & N. O. R. Co. v. Demilley, Tex.Civ.App., 41 S.W. 147, 148, affirmed 91 Tex. 215, 42 S.W. 540, the court said: "In construing a written instrument, we must give effect to every word according to its ordinary signification, if it be possible to do so, without defeating the obvious purpose and intent of the instrument."

The Supreme Court said in the case of Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980: "If a written

contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous."

In the case of Provident Ins. Co. v. Bagby, Tex.Civ.App., 167 S.W.2d 813, 814, the court said: "If a written contract is stated so that it can be given a certain definite legal meaning, it is not ambiguous. * * *

"It is the intention expressed by the language used in the written instrument that is to be determined, as contradistinguished from any intention the parties might have had but did not express therein."

Applying the rules herein stated, we find little, if any, difficulty in determining the meaning of the language used by the parties in expressing their intentions in the clause to be here interpreted. The basic purpose of the contract was for the *construction* of 45 houses and it was therefore a *construction* contract. Quoting from Webster's New International Dictionary, Second Edition, appellant says the word "discontinue" means "to put an end to; to cause to cease; to cease using; to give up; to abandon or terminate by a discontinuance" and such a meaning of the word is accepted by appellees who contend further that it means "to stop". Appellees contend that the words "to discontinue construction hereunder" mean "to stop construction under the contract." Appellant says the word "hereunder" means "under this" while appellees contend that the word "hereunder" as used by the parties in the clause in question means "under this; as authorized by this". Hart v. Commonwealth, 207 Ky. 343, 269 S.W. 300. Appellees further assert that the word "this" refers to the contract and the word "hereunder" as used by the parties means "under this contract."

Quoting from 35 C.J.S., page 205 and Webster's New International Dictionary, Second Edition, appellant defines the word "expedient", which authorities differ but little in defining the word. The latter authority says it means "Apt and suitable to the end; practical and efficient; as; an expedient change of policy; an expedient

solution of difficulty; hence, advantageous." Both authorities sum up the definition of the word as meaning "advantageous". Appellees accept such meaning of the word but state that the said dictionary further says that the word "expedient" is: "characterized by mere utility rather than principle; conducive to special advantage rather than what is universally right; also, of persons, guided by expediency rather than principle."

■ The words used to make up the clause here in controversy have common usages and their usages are usually understood. Observing the rules herein cited and applying the definitions cited and substantially agreed upon by the parties, it is our opinion that the language used in the contract is not ambiguous but it authorized appellees to terminate the contract at any time they thought it would be to their advantage to do so. No other construction can be reasonably given the language used in the clause in question as it is found in the contract. If the contract had been terminated at any time during the construction period, there would have been no reason why appellees could not have finished all or any part of the construction of the houses. Appellant has not alleged any losses sustained except for breach of the contract. The language used in the contract is as binding on appellant as it is on appellees. That part of the contract that authorized appellees to terminate it when they deemed or considered it expedient to do so was as binding on appellant as any other part of the contract. The contract made provisions for protecting appellant's interest if appellees sought to terminate the contract at any time during the construction period but appellant is not seeking any recovery for fees earned or money spent on construction. When appellees served notice upon appellant that they desired to terminate the contract, they were only exercising a right that had been given to them by agreement under the terms of the contract.

■ For the reasons stated it appears to us that appellees exercised a right given them under the terms of the contract.

Such being true, appellees did not breach the terms of the contract. Appellant therefore failed to allege a cause of action for damages based upon a breach of the contract and his pleading was subject to the exceptions levelled at it for the reasons stated by appellees and it was proper for the trial court to sustain appellees' exceptions and dismiss the alleged cause of action when appellant refused to amend his pleading. Hunt v. Dixie Motor Coach Corporation, Tex.Civ.App., 187 S.W.2d 250, and Ryan v. Holcombe, Tex.Civ.App., 170 S.W.2d 838.

A careful examination of the record and briefs presented fails to reveal reversible error. Appellant's points of error to the contrary are all overruled and the judgment of the trial court is affirmed.

STOKES, Justice (dissenting).

I regret that I cannot agree with my colleagues in their interpretation of the contract which forms the basis of this litigation. The controversy between the parties to the suit is confined to the provisions of Article IX of the contract which provides that: "Owner shall have the right to discontinue construction hereunder at any time deemed expedient by paying to contractor all of his costs etc." The majority of the court interpret that provision to mean that the owners had the right, at any time, to discontinue, or bring an end to, the entire contract if they deemed it expedient to relieve themselves of its terms. If the parties intended the contract should have such a meaning, it was equivalent in practical effect to no contract at all because the owners could have cancelled it at any time they desired to do so. Wilson v. Studebaker Corp., D.C., 240 F. 801. Contracts of business men are assumed to have a practical purpose. Courts will not assume that they intended to create the absurdity of executing a contract which they agree to be no contract. These parties undoubtedly entertained a substantial practical purpose which the arrangement between them was to serve, but the appellees nullified any such purpose by arbitrarily cancelling the contract before the work began. The practical conditions were that

each of them had an interest which he desired to promote. The owners desired to arrange for the construction of 45 houses and the contractor desired to advance his interests by building them for the owners and thereby earning for himself a substantial remuneration. The contract implies that the owners did not feel safe in binding themselves to construct the full number of houses specified in the contract but felt that, before the entire 45 houses had been completed, economic conditions might change or other circumstances might arise under which it would not be expedient to build more than had already been constructed. For their protection against the consequences of some change or contingency that would cause them to deem further construction inexpedient, the provision referred to was inserted. In my opinion it meant only that, if any condition should arise during the construction of the 45 houses which would cause the owners to deem it expedient to discontinue their construction, they would then have the right to bring an end to the contract. I find nothing in the terms agreed upon that could reasonably be construed as a right of the owners arbitrarily to terminate or cancel the contract. Appellees themselves evidently interpreted the provision in the contract which gives them the right to discontinue the construction to have reference to the construction of the houses instead of an arbitrary right to terminate the entire contract because, in the notice they gave to appellant they said: This is to advise you that I desire to exercise my right to "discontinue operations under said contract and *not commence any construction thereunder.*" (Emphasis added.)

Appellant alleged in his petition that, instead of discontinuing construction of the houses, appellees proceeded with their construction in the same manner that appellant was to construct them under the contract and that they had commenced the construction of 22 of the houses referred to in the contract, upon a portion of the property described therein, and that they intended to proceed with the construction of all 45 of the houses provided for in the

contract. Since the trial court sustained appellees' exceptions to the petition, we must assume that the allegations therein were true and that, instead of discontinuing the construction of the houses, appellees proceeded with their construction and intended to complete the entire enterprise.

In my opinion the provisions of Article IX of the contract established a condition precedent to appellees' right to discontinue the construction of the houses, and thus terminate the contract. The condition precedent was that they deemed it expedient to discontinue their construction. According to the terms of the contract, they did not have the right to terminate it unless they deemed it expedient to discontinue construction of the houses and the fact that they themselves proceeded with their construction shows that they did not deem it expedient to discontinue their construction. White v. Mitchell, 30 Ind.App. 342, 65 N.E. 1061; Fessman v. Barnes, Tex.Civ.App., 108 S.W. 170; Electric Lighting Co., v. Elder, 115 Ala. 138, 21 So. 983; Richison v. Mead, 11 S.D. 639, 80 N.W. 131.

It is an old and well-established rule that while contracts may contain provisions for their cancellation, the party having such right is not permitted to exercise it improperly to the injury of the other party. He cannot exercise it in some other manner, nor upon some other ground, than that which the contract provides and thus escape all liability under it. Moreover, if he does exercise it, it must be done in good faith. Sanger v. Slayden, 7 Tex.Civ.App. 605, 26 S.W. 847; Vidor v. Peacock, Tex.Civ.App., 145 S.W. 672; C. S. Martin & Son v. John Bonura & Co., Tex.Civ.App., 214 S.W. 841; Southern Mortgage Co., v. McGregor, Tex.Civ.App., 279 S.W. 860; West v. Suda, 69 Conn. 60, 36 A. 1015.

Appellees' exceptions to the petition were, in effect, that it did not state a cause of action because it showed upon its face that appellees had the right to discontinue construction of the houses by paying to appellant all costs incurred by him and the pro rata of any fees earned by him at the time appellees exercised their right to discontinue the enterprise; that the petition showed upon its face that performance of the contract had not commenced; that the allegations concerning the continued construction of 22 of the houses by appellees were irrelevant and immaterial; that the petition showed upon its face that the contract could be terminated at any time appellees desired to terminate it and that they had exercised their right to do so; and that the petition did not allege appellant had expended any money or earned any fees under the contract. These exceptions were all sustained by the trial court.

Since the condition precedent to appellees' right to cancel the contract did not arise and, manifestly, they did not deem it expedient to discontinue construction of the houses, I think the court below erred in sustaining appellees' exceptions to the petition and, in my opinion, the judgment should be reversed and the cause remanded.