### H. D. GURLEY v. W. H. WOODBURY.

(Filed 3 January, 1919.)

1. **Appeal and Error—Objections and Exceptions—Reference—Admissions.**
    Where a party to a reference has excepted and preserved his right to a trial by jury, but the uncontroverted matters are determinative of the action, this right becomes immaterial.

2. **Compromise—Subsequent Actions—Counterclaims—Actions.**
    Where an action has been compromised according to the written agreement of the parties, a counterclaim in another action between them em-

braced in the former action and the compromise agreement of the parties cannot be maintained.

3. **Compromise—Contracts— Banks and Banking— Shares of Stock— Book Values—Records—Actions—Corporations.**

Where the action depends upon the terms of a compromise of a former action, as to the value of certain shares of bank stock—that is, shall be the book value of the shares as shown by the records and books of said bank: *Held*, such book value should be ascertained by deducting the liabilities from the assets shown on the books and records of the bank; and it appearing that the parties had knowledge of a call of the directors to make good a deficiency of the capital stock in a certain amount, or go into liquidation, according to an order of the controller, on file as a record of the bank, the order of the controller was within the contemplation of the parties and to be considered as a record of the bank in ascertaining the book value of the shares under the terms of the agreement.

4. **Banks and Banking—Controller of Currency—Orders—Shares of Stock— Values.**

The decision of the controller of the currency as to an impairment of the capital stock of a bank is conclusive and final on the stockholders and the courts.

APPEAL by defendant from *Lane, J.,* at the April Term, 1918, of CHEROKEE.

This is an action to recover money. The matters in controversy were referred by the court against the will of the defendant, and his exception thereto was duly noted, but the following facts do not seem to be in controversy:

On the first day of June, 1914, the Bank of Dahlonega, Georgia, held a note of that date payable to said bank four months after date, with interest at 8 per cent after maturity, which rate of interest was permissible by the laws of Georgia, signed as maker by the defendant Woodbury and endorsed by the plaintiff Gurley; that the defendant Woodbury deposited with said bank as collateral security for the payment of said note thirty shares of stock of the North Georgia National Bank, with full authority to sell the same upon default in the payment of said note and to apply the proceeds to the note; that said note was not paid at maturity and said shares of stock were sold and were bought by the plaintiff Gurley for the sum of $360, which was credited on said note; that the transfers on said shares of stock when deposited by defendant as collateral security were signed by the defendant Woodbury, but his signature was not witnessed, and said North Georgia Bank refused to issue new stock to the plaintiff for said shares of stock because of the absence of a witness to the signature of the defendant; that the plaintiff thereupon sent the certificates of stock to the American National Bank of Asheville for the purpose of having the same properly witnessed and the signature of the defendant acknowledged by him; that

the defendant then commenced an action in the Superior Court of Buncombe County for the purpose of recovering said stock, alleging that the sale was illegal and the result of a conspiracy, and that he had been damaged thereby; that issue was joined in said action in Buncombe County, and thereafter all matters in controversy in said action and between the parties, the plaintiff herein being a defendant in said action and the defendant herein the plaintiff, were compromised and settled and the following agreement was entered into between the plaintiff and the defendant:

"This agreement, made and entered into this the 21 day of April, 1916, between W. H. Woodbury, of the county of Cherokee, State of North Carolina, and H. D. Gurley, of the county of Cobb, State of Georgia,

"Witnesseth: That, whereas there is now pending in the Superior Court of Buncombe County, North Carolina, a claim and delivery proceeding in favor of W. H. Woodbury against H. D. Gurley and the American National Bank, involving the right of possession of thirty shares of the North Georgia National Bank stock, of Blue Ridge, Ga., being certificate numbers 124 for ten shares, 145 for five shares, 154 for four shares.

"Whereas a judgment was obtained in the Superior Court of Lumpkin County at the October Term, 1915, against W. H. Woodbury, principal, and H. D. Gurley as security, upon a certain promissory note in favor of the Bank of Dahlonega, as collateral security for which the stock in question was originally deposited with said bank; and

"Whereas at a sale had on the 12th day of January, 1915, by the Bank of Dahlonega, H. D. Gurley purchased the said shares of stock in question, the consideration therefor being credited on the note in favor of said bank; and

"Whereas the said W. H. Woodbury contends that the said sale was illegal and the price bid and paid by said Gurley for said stock was inadequate and insufficient, the said contention being the basis for said action in said North Carolina court:

"Now, for the purpose of settling said action in the Superior Court of Buncombe County, North Carolina, and settling all differences between the parties hereto, it is agreed by and between them as follows:

"H. D. Gurley, on his part, agrees, upon the dismissal of said action in North Carolina and the proper signing of the transfers of said certificates by said W. H. Woodbury, to accept the said stock, to attend the meeting of the stockholders of the said North Georgia National Bank to be held on the 18th day of May, 1916, at the office of company at Blue Ridge, Ga., in accordance with the call therefor and notice of

assessment, either in person or by proxy, and on said date to allow the said W. H. Woodbury the actual book value of the said shares of stock, as shown by the records and books of said bank, as a credit upon the said execution in favor of said Bank of Dahlonega, disregarding the amount bid at the sale had by the said bank, heretofore mentioned, with the additional right granted to W. H. Woodbury to sell said stock for cash at any time between this date and the said 18th day of May, 1916, for any amount in excess of the book value thereof, credit to be given for the proceeds of said sale. Should the value of said stock exceed the amount of the bid of said Gurley at said sale, the credit to be allowed on said execution is to be based upon the original indebtedness, a credit for said amount having been allowed by said Bank of Dahlonega thereon prior to suit and judgment.

"The said W. H. Woodbury agrees, on his part, to immediately withdraw the suit pending in said Superior Court of Buncombe County, North Carolina, and to sign the transfers upon the stock certificates to the said H. D. Gurley.

"In witness whereof, each of said parties hereto have set their hands and affixed their seals, the day and year above written. Signed in duplicate.                                   "W. H. WOODBURY.

"H. D. GURLEY.

"HUGH A. HILL,
*"Notary Public, Cobb County, Georgia."*

The agreement was entered into on 21 April, 1916, and the notice of assessment referred to therein is a notice of an assessment by the controller of the currency of date 5 April, 1916, directed to the directors of the North Georgia National Bank and notifying them that the capital stock of said bank was impaired, the amount of the impairment, and stating in detail the items of worthless assets carried on the books of the bank and directing the directors to call a meeting of the stockholders for the purpose of an assessment on the stockholders to make good said impairment of the capital stock or to take steps to put said bank in liquidation; that pursuant to said notice the meeting of 18 May, 1916, was called, at which meeting the defendant was present and voted in favor of selling all of the property and assets of the bank to the Ferrin County Bank upon its assuming the liabilities of the North Georgia Bank, except its liabilities to stockholders; that said notice and assessment of the controller was on file and among the records of the North Georgia Bank on 18 May, 1916, the defendant himself testifying "it was among the records of the bank"; that the plaintiff did not attend the meeting on 18 May, 1916, but there is neither allegation nor evidence that the value of the stock was in any way affected by his absence;

that the value of said stock deposited as collateral security on 18th May as ascertained by deducting from the assets carried on the books of the bank the liabilities appearing on the books, and without considering the notice and assessment of the controller, was $125 a share; that the value of said stock on 18 May, 1916, as ascertained from the assets and liabilities shown on the books as modified by the notice and assessment of the controller was $19.13 per share, and the actual market value of said stock on said date was nothing. The plaintiff has paid said note to the bank.

The defendant insisted on a jury trial, which was denied, and he excepted.

His Honor rendered judgment in favor of the plaintiff for the amount of the note, except for attorneys' fees, subject to a credit of $459.12 as of 18 May, 1916, which was the value of the stock of the North Georgia Bank ascertained by deducting the liabilities from the assets carried on the books of the bank as modified by the notice of assessment of the controller of the currency, and both parties appealed.

The plaintiff assigns as error the refusal to render judgment in his favor for the face value of the note without allowing any credit for the stock.

The defendant assigns the following errors:

(1) His Honor erred in the following ruling: The court is of opinion that none of the issues tendered by the defendant and filed by him before the referee are issues of fact raised by the pleadings, evidence, report, and exceptions. The court, therefore, denies the demand of the defendant for a jury trial upon said issues, or any of them.

(2) The court erred in overruling the defendant's exception "C" to the referee's report, to wit, his conclusion of law "C," as follows: "That the decision of the controller of the currency dated 5 April, 1916, that losses aggregating $31,259.31 had been sustained by the North Georgia National Bank, and thereafter given credit for the $7,000 surplus fund, the capital stock was impaired to the amount of $24,260, is a conclusive decision that such losses had been sustained in so far as the corporate books were concerned and the status of the corporation was affected, and that the effect of such determination and adjudication was to charge the amount of such losses to the loss account upon the books of the bank, and that such impairment of the capital stock would be considered in arriving at the book value of the stock of the corporation."

(3) The court erred in overruling defendant's exception "D" to the referee's conclusion of law as follows: "The referee erred in concluding as a matter of law that the defendant is not entitled to recover upon the counterclaim set up in the answer upon the ground that all differences

between the parties were settled and agreed upon under the terms of the settlement of 21 April, 1916."

(4) The court erred in overruling defendant's exception "E" to the conclusion of law of the referee as follows: "The referee erred in concluding as a matter of law that the plaintiff, H. D. Gurley, is entitled to recover the sum of $2,131.79, with interest on said sum at 8 per cent from 1 October, 1914, until paid, subject to credit of $459.12 to be entered as of the date of 18 May, 1916, together with $22.70 court costs, with interest on $22.70 from 7 July, 1916. That the above-named credit of $459.12 is the actual book value of the twenty-four shares of stock as set out in the contract of 21 April, 1916, as shown by the books and records of said bank on 18 May, 1916."

(5) The court erred in overruling defendant's exception "F" to the referee's conclusion of law as follows: "The referee should have found that the defendant was entitled to recover of the plaintiff for twenty-four shares of stock at $125.03 per share, less the amount of the note, to wit, $2,131.79."

*Dillard & Hill* for plaintiff.
*M. W. Bell* for defendant.

ALLEN, J. The learned counsel for the defendant has been diligent to preserve his right to a trial by jury, and we would be inclined to reward his efforts in that behalf if the facts, about which there is no controversy, were not determinative of the rights of the parties.

It appears, however, that the counterclaim of the defendant is based on substantially the same facts alleged in his complaint in the action brought in Buncombe County, and is within the scope and terms of the compromise and settlement of 21 April, 1916, and, therefore, cannot again be inquired into in the absence of an allegation of fraud or mistake, and, with the counterclaim eliminated, the controversy is reduced to the single question of the amount of the credit to which the defendant is entitled on account of the shares of stock in the North Georgia Bank, there being no evidence of any damage to the defendant or depreciation of the stock because the plaintiff did not attend the meeting of the stockholders of 18 May, 1916, at which the defendant was present and voted for a sale of the assets, which showed the stock to be worthless. And the credit by reason of the stock depends on the construction of the contract or agreement of 21 April, 1916, and on the effect to be given to the notice of assessment by the controller of the currency.

· The parties have contracted as to the means of ascertaining the value of the stock on 18 May, 1916, and the question presented is not the actual or market value on that date, but what was the value measured

by the contract, which provides that the credit shall be "the actual book value of the said shares of stock as shown by the records and books of said bank."

The meaning of "book value of stock" is well understood and is ascertained by deducting from the assets carried on the books the liabilities and other matters required to be deducted (*People v. Coleman,* 107 N. Y., 541; *Cobble v. Cobble,* 97 N. Y. Supp., 773), and if the contract stopped here, there would be good reason in support of the defendant's contention that he is entitled to a credit of $125 per share, but it goes further and says it is the book value "as shown by the records and books of said bank."

Why this addition to a term having a definite meaning in the commercial world if no modification was intended, and why are the records of the bank specially mentioned? The reason is obvious. Sixteen days before the contract was signed the controller of the currency had given notice to the directors of an impairment of the capital of the bank, stating in detail the losses, amounting to $31,259.31, which were carried on the books as assets; and he also notified the directors that an assessment must be made on the stockholders to make good the loss or the bank must go into liquidation, and a meeting of the stockholders had been accordingly called for 18 May, 1916.

This notice of impairment of the capital and of the assessment was on file in the bank, and the defendant testified "it was among the records of the bank." The plaintiff and defendant knew of its existence because they refer to the notice of assessment and the meeting of the stockholders of 18th May in the contract, and as said in *Thomas v. Gilbert,* Anno. Cases, 1912 A, 519, of the action of the controller in reference to another bank, "The decision of the controller of the currency, as to the impairment of the capital stock of the Moscow Bank, was conclusive and final on the stockholders and the courts (*Aldrich v. Yates,* 95 Fed., 80; *Kennedy v. Gibson,* 8 Wall., 505, 19 U. S. (L. Ed.), 476; *Casey v. Galli,* 94 U. S., 677, 24 U. S. (L. Ed.), 168) and it left no alternative to the bank but to make up the deficiency or go into liquidation."

We have, then, at the time the contract was made the notice on file, which was binding on the stockholders and the courts and which the defendant regarded as a part of the records of the bank, and it was present in the minds of the parties because it is referred to, and it is but reasonable to conclude that they were contracting with reference to it, and for this reason the book value was to be ascertained from the books and records, and not from the books alone. If this is not true, the defendant is in the position of demanding and the plaintiff of agreeing to pay the book value of the stock when both knew that more than $31,000 of the assets carried on the books had been condemned and were

worthless, which is not to be believed of those in their right minds when there is no fraud or imposition.

The use of the word "actual" before "book value" is also significant. Webster defines "actual" as "real," and when used as it is in the contract, and considered in connection with the surrounding circumstances, it indicates clearly that the parties intended by "actual book value" the assets less liabilities carried on the books, with the items of assets condemned by the controller stricken out, and this is the opinion held by his Honor and embodied in his judgment.

We are, therefore, of opinion the notice of assessment by the controller must be considered as one of the records of the bank, and that the value of the stock on 18th May was the book value as modified by the notice, and, so holding, there is no reversible error on either appeal.

Affirmed on both appeals.