The **FORT WORTH NATIONAL BANK**, Temporary Administrator of Estate of Mary Tabb Thompson, Deceased, Appellant,

v.

Tabb **HARRELL**, Independent Executor of Estate of Mary Tabb Thompson, Deceased, Appellee.

No. 17771.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 5, 1976.

Rehearing Denied Dec. 10, 1976.

Law, Snakard, Brown & Gambill and R. F. Snakard, Fort Worth, for appellant.

Simon & Simon and Henry W. Simon, Jr., Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is an appeal by the Fort Worth National Bank, Temporary Administrator of the Estate of Mary Tabb Thompson, deceased, from a judgment of the Probate Court of Tarrant County, which judgment ordered the Bank, as Temporary Administrator, to pay to Tabb Harrell, Independent Executor of the Estate of Mary Tabb Thompson, deceased, the sum of $31,048.46.

Litigation concerning the estate of Mary Tabb Thompson, deceased, began when Tabb Harrell offered for probate a will executed by Mary Tabb Thompson on August 7, 1973. The Bank also offered for probate a will and several codicils that were all executed by Mary Tabb Thompson several years before the will offered for probate by Harrell. The trial of the question of which of the wills should be admitted to probate began on July 15, 1974, and thereafter on July 16, 1974, during the trial, the parties made an agreement by which they compromised and settled the matters in controversy.

In general the settlement agreement was to the following effect: the will dated August 7, 1973, would be admitted to probate; Tabb Harrell would be appointed Independent Executor of the estate; from the estate the Executor would pay to the Fort Worth National Bank, as Trustee, $650,000.00 to be paid in kind, at the discretion of the Executor, Harrell, said evaluation being determined as of May 31, 1974, but to the effect that said $650,000.00 evaluation shall be reduced or increased according to the percentage that the total estate has increased or been reduced between May 31, 1974, and the time that the property is turned over by the Bank to the said Tabb Harrell, Executor; (July 31, 1974); the Lighthouse for the Blind, an interested party, would get $150,000.00 in cash or kind, and was to be the recipient of not less than 50% of the income of the $650,000.00 paid to the Bank as Trustee for the use and benefit of the Blind of Tarrant County and other charities; a duplex would be conveyed to Walter and Madeline Bruflat; and after the above distributions were made the balance of the estate would go to the Independent Executor, Tabb Harrell.

The settlement agreement consisted of two written instruments, both executed July 16, 1974, the first being designated "Memoranda of Agreement" and the other, "addenda to the Compromise and Settlement." The provisions of the "Memoranda of Agreement" are in substance as is indi-

cated in the last paragraph. The "Addenda to the Compromise and Settlement" contained the following provision that is material to the matters being considered here:

"2.

"Simultaneously with the delivery of the assets of the Estate of Mary Tabb Thompson, Deceased, to Tabb Harrell as Independent Executor, he shall:

"(a) Deliver to The Fort Worth National Bank property of said Estate (exclusive of real property) equivalent in value as of May 31, 1974, to the total sum of $650,000 provided, however, such valuation shall be adjusted upward or downward, by the percentage that the value of the total estate has increased or decreased as of the date of the July 31, 1974 evaluation, all as provided in the 'Memoranda of Agreement' hereto attached. *For the purpose of such adjustment it is agreed that the value of the Estate on May 31, 1974, was $2,603,590.00.*" (Emphasis supplied.)

Pursuant to the settlement agreement a judgment was rendered admitting the August 7, 1973 will to probate on August 15, 1974. Thereafter in the same case on September 9, 1975, Tabb Harrell, Independent Executor of the Estate of Mary Tabb Thompson, deceased, filed what he designated as a "Motion for Clarification and Interpretation of Assets Distributed Based Upon Judgment." He therein alleged that the Bank in making its May 31, 1974 evaluation of the estate did not include accrued interest on the interest-bearing assets of the estate, but that in its later evaluation (July 31, 1974), made for the purpose of determining the amount of the increase or reduction of the $650,000.00 trust fund that was agreed on, the Fort Worth National Bank did include interest that had accrued on some of the interest-bearing assets; that by including that interest the Bank increased the value of the estate, thereby reducing the amount of the deduction from the $650,000.00 trust fund; and that because of those facts, $18,000.00 is now due and owing to Harrell by the Bank, as Temporary Administrator; and Harrell prayed that the Bank be ordered to pay to Harrell this $18,000.00 and for general relief.

A hearing was then held on this motion, and at its conclusion the Probate Court awarded Harrell a judgment against the Bank, as Administrator, for $31,048.46. The Bank here appeals from that decree.

We reverse and render.

The matters involved here are matters "incident to an estate" within the meaning of Sec. 5(d) of the Texas Probate Code. The case involves the settlement or distribution of an estate.

The Bank's first point of error is that the trial court erred in admitting into evidence over its objections Harrell's Exhibits Nos. 1 through 8, and No. 10, and any oral testimony pertaining thereto in support of appellee's motion for clarification.

Its second point of error is that the trial court erred in construing the Compromise and Settlement Agreement and the Addenda thereto.

We sustain those two points of error.

The parties had agreed that property equivalent in value as of May 31, 1974, to the sum of $650,000.00 would be taken from the Thompson estate and put into a trust to be administered by the Bank, as Trustee, but they provided that such evaluation would be adjusted up or down by the same percentage that the value of the total estate had increased or decreased between the date of May 31, 1974, and the date of an evaluation to be made as of July 31, 1974.

In the "Addenda to the Compromise and Settlement Agreement" relative to the matters just referred to, the parties expressly agreed as follows: "*For the purpose of such adjustment it is agreed that the value of the Estate on May 31, 1974, was $2,603,-590.00.*" (Emphasis supplied.)

■ The real question presented by this first point of error is whether Harrell, after having expressly agreed with the Bank on the value (of the estate as of May 31, 1974) that was to be used in determining what adjustment if any would be made on the value of the $650,000.00 trust estate, can

completely disregard this agreed valuation, and have a trial in which the issue of the value of the estate as of May 31, 1974, is treated as an open fact issue. Can Harrell disregard that part of the agreement in an instance such as this where he has not sought to have the agreement reformed on the grounds of fraud, accident or mistake?

The settlement agreement and the addenda in no way indicate how the parties went about choosing their agreed figure of $2,603,590.00 as being the value of the Mary Tabb Thompson estate as of May 31, 1974. Oral evidence was offered to the effect that while the attorneys were negotiating the settlement, a Bank employee got from the Bank a copy of what it called a Review Sheet, prepared for its internal use, which purported to list the assets of the estate and the value of the items. It listed a number of items of real estate as being worth $1.00. The total current market value as shown on that review sheet (Ex. No. 10) was shown to be $2,538,597.89. The parties knew that the $1.00 value there put on the real estate was incorrect, so they had one of the bankers give his best estimate of the value of the estate's realty, which he placed at $65,000.00. The parties than added that sum to the $2,538,597.89. This gave a total of $2,603,597.89, which was the same figure that the parties later inserted into their addenda to the settlement agreement as being the agreed value of the Mary Tabb Thompson estate as of May 31, 1974.

Harrell, at the hearing, proved up his case by the testimony of Mr. Mike Liles, one of his attorneys, and by the use of the complained of exhibits that Liles had prepared.

All of the Exhibits Nos. 1 through 8 and No. 10 and the accompanying testimony of Liles tended to show that the May 31, 1974 valuation figure of $2,603,590.00 that the parties had agreed upon was not in fact the true value of the Mary Tabb Thompson estate as of May 31, 1974. That evidence was offered for the purpose of proving that the figure agreed on was not the true value of the estate as of May 31, 1974.

For example, Exhibit No. 3 brought out that on the May 31, 1974 review statement the total real estate value was shown as $65,000.00 and on the July 31, 1974 statement, the value of the surface real estate was shown as $77,810.00 and the minerals (real estate) was listed as $10,903.00, totaling $88,713.00. This was a difference of $23,713.00 in the value of the real estate as shown on the two statements, although Liles testified that there was no real economic change that occurred between the two dates. He then contended that the real estate value should have been the same on both statements and that $23,713.00 should therefore be subtracted from the July 31, 1974 total. The same result would be obtained by adding that figure to the review sheet.

Exhibit No. 4 and Liles' testimony showed that on the July 31, 1974 statement was listed "Sundry Assets" consisting of a Chevrolet automobile, miscellaneous household furniture, furnishings and personal effects valued at $5,500.00. Liles testified that this asset was not listed on the May 31, 1974 review and that the $5,500.00 should be subtracted from the July 31, 1974 total valuation or added to the May 31, 1974 figures.

Exhibit No. 5 and Liles' testimony was to the effect that the July 31, 1974 statement listed accruals of interest on interest-bearing obligations in the amount of $2,767.59 and that the May 31, 1974 review statement showed no such accruals of interest. He testified that because of this inconsistency the accounts should have been adjusted by subtracting the $2,767.59 from the July 31, 1974 evaluation.

Exhibit No. 6 and Liles' testimony relative thereto indicate that there should be another adjustment by subtracting $21,342.34 from the July 31, 1974 total. They say this was because of the difference in the way the cash on hand item was handled in the two statements.

Liles testified that when effect is given to the various adjustments that he testified should be made between the May 31, 1974 review statement and the July 31, 1974

valuation, the result is that the value of the estate diminished between the two dates by 6.47%.

When the Bank delivered the assets of the estate to Harrell it kept as the corpus of the trust estate $633,791.00. Liles contended that when these adjustments that he testified about were given effect, the Bank should have kept for the trust only $604,500.00, this being after the 6.47% of the $650,000.00 was deducted from that figure. This difference was $29,291.00, and the trial court gave Harrell a judgment for that sum plus 6% interest on it from November 1, 1974, to January 16, 1976, date of judgment. This totaled $31,048.46.

At the beginning of the hearing the Bank filed a pleading wherein it alleged that since neither the compromise and settlement agreement nor the addenda thereto were ambiguous, it would be improper for Harrell to introduce extrinsic evidence and that the court could not properly consider such evidence in passing on the motion.

Also at the beginning of the hearing when Liles started to testify about the exhibits referred to, counsel for the Bank objected to Liles' giving any evidence or testimony concerning the facts surrounding the manner in which this agreement was arrived at because the agreement speaks for itself. The trial court gave counsel for the Bank a running bill of exceptions to that character of evidence.

The parties admit that the settlement agreements involved here are not ambiguous so as to require explanation, and we hold that they are not ambiguous. Harrell in no way seeks to reform the settlement agreements on the ground that they, or parts of them, were induced by fraud, accident or mistake. The instruments are not incomplete so as to require extrinsic evidence to give them meaning.

We hold that the evidence complained of was inadmissible because it was in violation of the parol evidence rule. The trial court erred in admitting it. *Coleman v. Forister*, 514 S.W.2d 899 (Tex.Sup., 1974) and *Ross & Sensibaugh v. McLelland*, 262 S.W.2d 205 (Tex.Civ.App., Fort Worth, 1953, writ ref., n. r. e.). The evidence permitted Harrell to vary, add to and contradict the agreement he had made as to the May 31, 1974 valuation. The evidence was to the effect that the valuation of the estate on that date was not the valuation that the parties had agreed on, but that it was in fact another figure.

The effect of the court's ruling admitting the complained of exhibits and Liles' testimony relating to the proposed adjustments was to permit Harrell to relitigate the issue of the value of the Mary Tabb Thompson estate on May 31, 1974, although the parties had expressly agreed that such value would be taken as $2,603,590.00. The court's ruling rendered wholly ineffective and meaningless the parties' agreement as to the value on May 31, 1974.

Under the facts of this case the parties were bound by their agreement. When this case began, the agreement itself established the value of the estate on May 31, 1974, at $2,603,590.00. The parties were precluded by the parol evidence rule from introducing the complained of exhibits and the testimony of Liles to establish that the figure the parties had agreed on as being the May 31, 1974 valuation was not the true value of the estate and that such value was in fact another figure.

■ The parol evidence rule is a rule of substantive law and evidence admitted in violation of it is without probative force, even though not objected to. *Ross & Sensibaugh v. McLelland*, supra, and *Texarkana & Ft. S. Ry. Co. v. Brass*, 260 S.W. 828 (Tex.Com.App., 1924, adopted). In the latter case the Commission of Appeals said at page 830: "Because there is a written contract that has merged and destroyed the identity and force of all acts and intentions leading up to it, whether parol evidence of such acts and intentions be admitted without objection, or be sought to be established by argument or inference from facts admitted without objection, it equally follows that the outside matter, in the absence of ambiguity, fraud, accident, or mistake with respect to the contract, or of some other

recognized 'exception,' is 'incompetent,' is 'without probative force,' is 'intrinsically without weight,' 'cannot be shown,' and 'will not support a verdict.'"

In the case of *Gurley v. Woodbury*, 177 N.C. 70, 97 S.E. 754 (1919), a compromise and settlement of a lawsuit was involved. One provision in the written settlement agreement was that Gurley would become the owner of certain Bank stock and that in exchange for that Woodbury would be allowed on a debt he owed the Bank a credit equal to the actual book value of such Bank stock as that value was shown by the books and records of the Bank. The court held that since the parties had contracted that the value of the stock would be ascertained by a certain designated means, that the question presented by the lawsuit was not the actual or market value on that date, but such question was what was the value of the stock measured by the contract, which provides that the credit shall be " 'the actual book value of the said shares of stock, as shown by the records and books of said bank.'"

In *Burden v. Colonial Homes, Inc.*, 79 N.M. 170, 441 P.2d 210 (1968), a question was involved that was similar to the one we have here. That court said at page 213 the following: "The parties, having agreed upon a settlement sum which included deposits or franchise payments, cannot now attempt to go outside the agreement for evidence to support a contrary conclusion, that deposits or franchise payments were not intended to be part of the settlement sum."

The following is from *Jones v. Dumas Development Co.*, 229 S.W.2d 936, at page 939 (Tex.Civ.App., Amarillo, 1950, writ ref., n. r. e.): "It is presumed that every provision of a contract is incorporated therein for a purpose and the courts may not disregard any of the language there used by the parties to express themselves or add anything thereto."

Holdings to the same effect are: *General Ins. Corporation v. Laney*, 224 S.W.2d 746 (Tex.Civ.App., Fort Worth, 1949, no writ hist.), and *Masterson v. Gulf Oil Corpora-*tion, 301 S.W.2d 486 (Tex.Civ.App., Galveston, 1957, writ ref., n. r. e.).

The Bank's 4th point of error is that the court erred in awarding Harrell a recovery of $31,048.46 in view of the fact that he prayed for a recovery of only $18,000.00.

The facts in this connection are unusual. Harrell's pleadings or motion alleged that in arriving at the value of the estate as shown on the May 31, 1974 review sheet that is involved the Bank did not include $18,000.00 of accrued interest that had accrued on interest-bearing assets of the estate, but that it did include that item in arriving at the July 31, 1974 evaluation.

Harrell then prayed for a recovery of this $18,000.00 from the Bank. The $18,000.00 interest item was the only one referred to in Harrell's pleading on which the case was tried.

The evidence offered by Harrell was to the effect that this interest item only amounted to $2,767.59 instead of the $18,-000.00 that Harrell had alleged.

Harrell's testimony at the hearing was not restricted to the interest item that had been alleged in the pleading. He was permitted to show several other items that were shown on the July 31, 1974 valuation sheet that did not appear on the May 31, 1974 review sheets. These are heretofore described in this opinion and are reflected by the exhibits complained of. The figures on those items which were not pleaded were added to the $2,767.59 interest item which was the only one pleaded. Together they all totaled $29,291.00. The court then added 6% interest on that figure from November 1, 1974, to January 16, 1976, and then gave Harrell a judgment for the total or $31,048.46.

It is not necessary for us to pass on the Bank's 3rd and 4th points of error. They have become immaterial because we have sustained Harrell's first two points of error.

We are now presented with the question of whether we should here render judgment or remand the matter to the trial court.

With this question in mind, counsel for Harrell was asked, while arguing this case

before this Court, whether Harrell questioned the Bank's valuation of the estate as of July 31, 1974. This Court was advised that Harrell did not question it in any way, his sole contention being that if items were listed on that valuation list that they should also have been listed on the May 31, 1974 review sheet that was involved. Harrell's lawyer, Mr. Liles, took the same position while testifying.

■ In this case the parties established the May 31, 1974 valuation by their agreement as being $2,603,597.89. Neither side contests the valuation made by the Bank as of July 31, 1974, which figure was $2,538,-120.00. The estate thus decreased in value between those two dates by $65,470.00. The percent of shrinkage of the entire estate was thus 2.51%. That percent of the $650,000.00 is $16,344.00. Deducting that sum from the $650,000.00 leaves $633,-656.00. This was the value of the property that the Bank retained to form the corpus of the trust for the blind.

We hold that the Bank's computations were correct.

Since the value of the estate on May 31, 1974, was established by the agreement of the parties as being $2,603,597.89 and since the parties admit that the valuation of the estate as made by the Bank on July 31, 1974, is correct, we conclude that we should here render judgment that Harrell recover nothing from the Bank in any capacity.

The trial court's judgment is reversed and judgment is here rendered that appellee, Tabb Harrell, Independent Executor of the Estate of Mary Tabb Thompson, deceased, recover nothing by his suit from the appellant, Fort Worth National Bank, in any capacity. All costs are taxed against Tabb Harrell, Independent Executor of the Estate of Mary Tabb Thompson, deceased.